Elizabeth A. **VACCARIELLO**, Plaintiff,

v.

Lawrence B. **LAGROTTERIA**, Defendant.

No. 84 C 9021.

United States District Court, N.D.Illinois, E.D.

Nov. 7, 1984.

Carmen L. Fosco, Burke & Smith, Chicago, Ill., for plaintiff.

Norman Newman, Lord, Bissell & Brook, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Elizabeth Vaccariello ("Vaccariello") appeals from the September 21, 1984 decision, 42 B.R. 867,[1] and September 25 order of Bankruptcy Judge Hertz rejecting, as untimely, the objection to dischargeability of the claimed "debt" of bankrupt Lawrence Lagrotteria ("Lagrotteria") to Vaccariello and the class she represents. For the reasons stated in this memorandum opinion and order, Judge Hertz's order is affirmed.

### Facts

Lagrotteria was an officer, director and shareholder of Financial Partners Brokerage, Ltd., a vehicle through which the now-notorious Robert Serhant defrauded a large number of investors in commodities futures. In *Vaccariello v. Financial Partners Brokerage, Ltd.*, Nos. 82 C 5910 and related cases, Vaccariello (on her own behalf and for the class of such investors) sued numerous defendants (including Lagrotteria) for millions of dollars,[2] asserting the usual shotgun pattern of legal theories (including of course the ubiquitous RICO count—why not?). Judge Leighton of this District Court, to whom the action was originally assigned (it has since been reassigned to Judge Rovner as part of her initial calendar).

On October 27, 1983 Lagrotteria filed for bankruptcy in Case No. 83 B 13253. On November 4, 1983 the Bankruptcy Court fixed January 4, 1984 as the last day for filing objections both as to Lagrotteria's discharge and as to the dischargeability of particular debts of Lagrotteria. Then on December 1, 1983 (because of a change in the appointed trustee in bankruptcy to Glenn Heyman, the "Trustee") a new order was entered fixing February 15 as the date for both those purposes. That order employed the standard form with blanks filled in (see Appendix 1). It was captioned:

ORDER FIXING TIMES FOR FILING OBJECTIONS TO DISCHARGE AND FOR FILING COMPLAINTS TO DETERMINE DISCHARGEABILITY OF CERTAIN DEBTS, COMBINED WITH

---

1. Except for the very beginning of the bankruptcy proceedings in 1983, all relevant occurrences were in 1984. Accordingly any subsequent references to 1984 dates will omit the year designation.

2. In her April 27 memorandum in opposition to Lagrotteria's motion to dismiss Vaccariello's complaint challenging dischargeability of Lagrotteria's "debt" to Vaccariello and her class, Vaccariello's counsel says the claim "is based on fraud and exceeds Twenty Million Dollars ($20,-000,000.00)...."

NOTICE THEREOF AND OF MEETING OF CREDITORS AND OF AUTOMATIC STAY

In relevant part it provided:

1. (If the debtor is an individual) February 15, 1984 is fixed as the last day for the filing of objections to the discharge of the debtor. Pursuant to 11 U.S.C. § 727 ["Section 727"].

2. (If the debtor is an individual) February 15, 1984 is fixed as the last day for the filing of a complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(c) ["Section 523(c)"].

On February 14, pursuant to notice given to all interested parties, including one of Vaccariello's substantial battery of lawyers,[3] the Trustee filed a motion that must be quoted in full to focus the issue now before this Court:

Now comes GLENN R. HEYMAN and respectfully represents unto this Honorable Court as follows:

1. That he is the duly appointed, qualified and acting Trustee in these proceedings.

2. That the last day for filing Objections to Discharge in these proceedings is February 15, 1984.

3. That an adjourned 341 meeting is scheduled to take place at the office of your petitioner on February 29, 1984, which testimony and further examination by the Trustee of various documentation is crucial to Trustee's determination as to the administration of this estate.

WHEREFORE, the Trustee prays for the entry of an Order extending the last day within which creditors may file objections to discharge in these proceedings from February 15, 1984, to and including March 30, 1984, and for such other and further Order as to the Court shall seem meet.

Judge Hertz granted the motion by a February 14 minute order (the "Order").

On that same day and with like notice, again including a copy to Vaccariello's attorneys,[4] Bank of Commerce & Industry ("Bank") sought an extension of time to file a complaint to determine the dischargeability of Lagrotteria's obligation to Bank:

Now comes Bank of Commerce & Industry (the "Bank"), a creditor herein, by its attorneys, and in support of its motion respectfully states:

1. The last day for filing complaints to determine dischargeability in this case is February 15, 1984.

2. That an adjourned 341 meeting is scheduled to take place at the office of Glen R. Heyman, the trustee in this case. The testimony of the debtor, and further examination of him by the Bank, is crucial to the Bank's determination whether to file a complaint to determine dischargeability.

3. That if an extension of time is granted to the Bank, it may decide not to file a complaint to determine dischargeability. If no such extension is granted, the Bank will have no choice but to file a complaint to determine dischargeability on February 15 in order to protect its interests, thus imposing possibly avoidable administrative costs upon this estate.

WHEREFORE, the Bank prays for the entry of an order extending the last day within which it may file a complaint to determine dischargeability in this case from February 15, 1984 to and including June 30, 1984 and for such other and further relief as the court may deem just.

Judge Hertz granted that motion as well.

One of the numerous Vaccariello lawyers, Carmen Fosco, explained his involvement in the proceedings in an April 27 affidavit filed in the Bankruptcy Court. According to his affidavit:

1. I am associated with the firm of BURKE AND SMITH CHARTERED.

2. BURKE AND SMITH CHARTERED is one of the law firms representing the plaintiff class certified in

---

3. Vaccariello's class action complaint lists no fewer than *six* law firms as plaintiffs' counsel.

4. Though both motions were presented and ruled on by Judge Hertz the same day (February 14), Trustee's motion was served two days earlier. See n. 5.

*Vaccariello v. Financial Partners Brokerage, Ltd. et al.* No. 82 C 5910, pending before Judge Layton [sic] in the United States District Court for the Northern District of Illinois.

3. On or about February 10, 1984 I assumed primary responsibility for representing the above-described plaintiff class in various bankruptcies filed by certain defendants in the above-described class action, including the instant bankruptcy filed by LAWRENCE LAGROTTERIA.

4. Upon assuming responsibility for representing the interest of the plaintiff class in the bankruptcy of LAWRENCE LAGROTTERIA, I reviewed the office file regarding said bankruptcy to determine the time limits established by the court for filing objections to the discharge of a debt under 11 U.S.C. § 523.

5. Although I noted that the deadline for filing an objection under 11 U.S.C. § 523 was February 15, 1984, I also noted that the Trustee had prepared a motion to extend the deadline for creditors to file objections to discharge from February 15, 1984 to and including March 30, 1984.

6. I determined that the Trustee's motion, if granted, would extend the deadline for filing objections to the discharge of a debt under 11 U.S.C. § 523 and, consequently, did not file a motion on behalf of plaintiff herein to extend the deadline for objections under 11 U.S.C. § 523.

7. Had I interpreted the Trustee's motion to exclude objections to the discharge of a debt under 11 U.S.C. § 523, I would have requested an extension to so object.

Fosco's affidavit is wholly silent as to just how he "determined" Trustee's motion "would extend the deadline for filing objections to the discharge of a debt. . . . " It is equally silent as to the existence of Bank's motion for just such an extension—a motion served by a highly experienced bankruptcy counsel *after* Trustee's service of his notice (Fosco's affidavit does refer to Trustee's notice, *though not to Bank's*).[5] And though Fosco, as a late entrant, cannot be faulted for earlier omissions by his associates, there is also a deafening silence as to what Vaccariello and her lawyers had been doing about objecting to the dischargeability of their claim during the three and one-half months between Lagrotteria's October 8, 1983 filing in bankruptcy and Fosco's assignment to the matter February 10.

In any event Vaccariello thereafter filed a complaint objecting to dischargeability of Lagrotteria's debts to the class members (in the great traditions of the profession, Fosco filed that complaint March 30, the very last permissible day even under the theory of his affidavit). Lagrotteria moved for dismissal of the complaint as untimely. Vaccariello responded with a twofold argument:

1. Vaccariello's complaint was timely because the Trustee-obtained extension covered objections to dischargeability of individual creditors' debts as well as to discharge of the debtor from bankruptcy.

2. Even were that not so, Vaccariello's counsel's "reasonable belief" as to the scope of the Order was "excusable neglect."

Judge Hertz rejected both arguments, and this appeal followed.[6]

---

**5.** Trustee's notice as to seeking an order extending the time for objections to *discharge* was mailed February 6. John Collen, Esq. of Nachman, Munitz & Sweig followed that notice by a February 8 mailing of Bank's motion to extend the time for objections to *dischargeability* of Lagrotteria's obligation to Bank. Because Fosco has not shared his asserted analysis with the Bankruptcy Court, opposing counsel or this Court, there is no hint of why Bank's attorneys found it necessary to act at all if Fosco's asserted reading of Trustee's motion were the right one.

**6.** Neither the parties' submissions nor this Court's independent research have or has disclosed any District Court or Court of Appeals cases that clearly bear on the issues here. As the text discussion reflects, that is most likely due in part to the newness of the Bankruptcy Rules as now in force and in part to the clarity of those Rules, the relevant statutes and the usage of "discharge" and "dischargeability" that

### Objections to "Discharge" and to "Dischargeability"

■ Section 727(a) says the court "shall grant the debtor a discharge" unless certain conditions are met. Section 727(c)(1) specifically grants standing to the *trustee* or a creditor to object to such discharge.

On the other hand, though Section 523 also uses the word "discharge," it always does so in the context of discharge from a particular debt or kind of debt and *not* in terms of the bankrupt's total discharge in bankruptcy. Because the very nature of the Section 523 concept is to focus on specific debts involving specific creditors, Section 523(c) [7] calls for discharge "unless, on request of the *creditor* to whom such debt is owed" (emphasis added), the court determines nondischargeability. Of course the debtor too has an obvious stake in a like determination. That dichotomy of the real parties in interest is mirrored in Bankruptcy Rule ("Rule") 4007(a) (emphasis added):

(a) Persons Entitled to File Complaint. *A debtor or any creditor* may file a complaint with the court to obtain a determination of the dischargeability of any debt.

What is significant for current purposes is that (in sharp contrast to Section 727(c)(1)) no such power to obtain a determination of dischargeability is given the *trustee* under the language of either Section 523(c) or Rule 4007(a). Indeed *In re Overmyer*, 26 B.R. 755, 757–59 (Bankr.S.D.

N.Y.1982) held an order obtained by a trustee specifically purporting to extend time to object to the dischargeability of debts was invalid, though the trustee had properly obtained a corresponding extension of time to object to the debtor's discharge in bankruptcy. *Overmyer*'s analysis and language might well have been written for this case (so much so that quoting its relevant sections would reproduce nearly the entire opinion—and lengthen this one unduly). It teaches that even had Judge Hertz's order in response to Trustee's February 14 motion expressly granted an extension of time to object to dischargeability of specific debts (and of course it did not), such an order would have had no force. [8]

Even apart from that question of power (which should be fully dispositive of the meaning of the Order), the uniform usage of "discharge" and "dischargeability" in the bankruptcy buttresses Judge Hertz's conclusion. As already seen, the earlier (December 1, 1983) standardized order form, which the Order extended in part, clearly made that distinction—in concept and in terminology—both in its caption and in its decretal paragraphs. And there is much more:

1. Rule 4007 is itself captioned "DETERMINATION OF DISCHARGEABILITY OF A DEBT." Each of Rules 4007(a), (c) and (d) employs the identical usage, consistently speaking of "dischargeability." In fact Rule 4007(d)

---

uniformly prevails in the bankruptcy practice. In fairness to Lagrotteria it should be said that his counsel has cited in support of his position *In re Hubbard*, 577 F.2d 98 (9th Cir.1978) and *In re Koritz*, 2 B.R. 408, 413 (Bankr.D.Mass.1979) (both decided under the old Bankruptcy Act). In *Hubbard* the Court of Appeals for the Ninth Circuit, dealing with what could perhaps be an all-fours factual situation under the old Act, affirmed the opinion of District Judge (now Circuit Judge) Warren Ferguson that rejected as untimely an objection to dischargeability of a debt, where the bankruptcy judge had extended only the deadline for filing objections to the *discharge* of the *bankrupt* at the behest of the trustee. But the *Hubbard* opinion does not provide enough facts for this Court to tell whether the extension orders had (for example) referred specifically to "discharge of the bankrupt" or (as in this case) referred simply to "discharge." It therefore seems appropriate to engage in the

analysis in this opinion, whether or not *Hubbard* might be viewed as a strong (or any) precedent. In any event *Hubbard* can assist only Lagrotteria, not Vaccariello. As for *Koritz*, it is clearly in point but was never reviewed on appeal.

**7.** That is the provision applicable to claims of nondischargeability of the kind asserted by Vaccariello (fraud and violation of fiduciary obligations).

**8.** Simultaneously with filing her opposition to Lagrotteria's motion to dismiss the complaint, Vaccariello filed a "Motion To Clarify Order." Because the Bankruptcy Court would not have had the power to extend dischargeability on Trustee's motion, Vaccariello's motion was illfounded and was properly rejected by the Bankruptcy Court.

places the two terms in meaningful juxtaposition, referring both to a "motion by a debtor for a discharge under § 1328(b)" and by contrast to a "complaint to determine the dischargeability of any debt pursuant to § 523(c)."

2. In 6 King & Moller, *Collier on Bankruptcy* (15th ed.1983), the forms volume to that treatise, Part II lists among its subjects "Discharge, Dischargeability." Section C is titled "Discharge; Revocation of Discharge; Dischargeability." Forms 2–301 through 2–307 relate to discharge of the *debtor* and consistently speak only of "discharge," while each of Forms 2–308 through 2–312 consistently uses the term "dischargeability" in referring to individual *debts*.

3. 1 Herzog, Lowe & Zweibel, *Herzog's Bankruptcy Forms and Practice* (1982 revision) presents exactly the same picture. Section II, Part 3 is likewise titled "Discharge and Dischargeability." Forms C–169 through C–186 reflect the identical use of the term "discharge" to refer only to the *debtor's* status, while Forms C–187 through C–194 uniformly use the term "dischargeability" to refer to the status of the particular *debt*.

4. 6 April, *West's Federal Forms* (Lavien, 1982 pocket part) is an outmoded set that has not really caught up to the new bankruptcy laws. Chapter 8, however, is also captioned "Discharge and Dischargeability," reflecting precisely the same distinction.

In fact Vaccariello's *own complaint* (emphasis added) undercuts her argument:

1. Its caption reads:

COMPLAINT OF VACCARIELLO CLASS PLAINTIFFS OBJECTING TO THE *DISCHARGEABILITY* OF LAGROTTERIA'S DEBTS AS TO THEM.

2. Its introductory paragraph states:

PLAINTIFF, ELIZABETH VACCARIELLO, on behalf of herself and all other persons similarly situated, by one of her attorneys, BURKE AND SMITH CHARTERED, objects to the *dischargeability*

of Lagrotteria's Debts as to them, and in support thereof states as follows.

3. Its first paragraph reads:

1. This is an adversary proceeding to determine the *dischargeability* of a debt.

4. Its prayer for relief asks:

WHEREFORE, plaintiffs request that this court:

1. Order that this objection to *dischargeability* of a debt may be maintained as a class action and that Vaccariello be named as the representative of the class;

2. Determine that Lagrotteria's debts are nondischargeable as to plaintiffs herein; and

3. Grant such other and further relief as is just.

Indeed Vaccariello's counsel, in response to this Court's request for any additional authority, "wishes to bring to the court's attention ... Bankruptcy Rule 2002(f)...." Yet that Rule, like Rule 4007(d), presents the selfsame contrast between "discharge" and "dischargeability" (emphasis added):

[T]he clerk shall give the debtor, all creditors and indenture trustees notice by mail of ... (5) the time fixed for filing a complaint objecting to the *debtor's discharge* pursuant to § 727 of the Code as provided in Rule 4004; (6) the time fixed for filing a complaint to determine the *dischargeability* of a *debt* pursuant to § 523 of the Code as provided in Rule 4007.

Thus Vaccariello's own usage (and even the authority she cites, Rule 2002(f)) is all of a piece with the uniform usage reflected both by the papers in this case and by the forms universally used in bankruptcy proceedings. That leaves no doubt or room for argument as to the limited meaning of the word "discharge" in the Order and in the motion to which it was responsive.

In sum, the only reasonable reading of the Order is that it exercised the Bankruptcy Court's power in response to the only relief Trustee could legitimately seek: extension of the time to object to Lagrotteria's discharge in bankruptcy, *not* to object to the dischargeability of any of Lagrotteria's specific debts.[9] Vaccariello clearly

---

**9.** One of the things Vaccariello's counsel does    not really address, in his argument that *he* be-

loses on the first branch of her argument.

### Lack of Justifiable Reliance

■ Alternatively Vaccariello asks relief under Rule 9006(b)(1):

**In General.** Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Two factors independently require rejection of that request:

1. Rule 9006 itself precludes an untimely motion for extension of the time for dischargeability of specific debts.

2. No "excusable neglect" has been shown in any event.

On the first issue Rule 9006(b)(1) is made expressly inapplicable where Rule 9006(b)(3) applies. And Rule 9006(b)(3) states (emphasis added):

**Enlargement Limited.** The court may enlarge the time for taking action under Rules 1006(b)(2), 3002(c), 4003(b), 4004(a), *4007(c)*, and 8002 only to the extent and under the conditions stated in those rules.

Rule 4007(c)—which controls the time for filing any complaint under Section 523(c)— specifically provides (emphasis added):

On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. *The motion shall be made before the time has expired.*

Those provisions represent a deliberate change in law, under which Rule 9006(b)(1) and 9006(b)(3) are plainly intended to be mutually exclusive. As the Advisory Committee's Note for Rule 9006 says (emphasis added):

Unless a rule which contains a specific authorization to extend time is listed in paragraph (3) of this subdivision, an extension of time may be granted under paragraph (1). *If a rule is included in paragraph (3) an extension may not be granted under paragraph (1).*

*In re Figueroa*, 33 B.R. 298, 300 (Bankr.S. D.N.Y.1983) (footnotes omitted) stated the matter succinctly:

Under former Bankruptcy Rules 409(a)(2) and 906(b)(2), this Court clearly could grant Citibank's motion as long as it proved that its failure to file before June 7, 1983 was due to "excusable neglect." The new Bankruptcy Rules 4007(c) and 9006(b)(3), however, no longer permit the courts to extend the time to file a § 523(c) complaint after the expiration date. It is clear that by prohibiting that which it formerly permitted, Congress intended to no longer subject the preeminent fresh start policy to the uncertainties of excusable neglect in failing to timely object to discharge of a claim.

Accord, such cases as *In re Lane*, 37 B.R. 410, 412–14 (Bankr.E.D.Va.1984) and cases cited *id.* at 414. Vaccariello cannot bootstrap herself by an out-of-time prayer for relief, brought under the very Rule that expressly *requires* timeliness.

Even were that not the case, on the second and independent issue Vaccariello demonstrates a misunderstanding of "excusability" that matches her misreading of

---

lieved Trustee's February 14 motion had asked for an extension of objections to dischargeability of debts, is the unfair effect such an unstated intention would have on Lagrotteria. Were that unnatural stretch of the ordinary meaning of language to be sanctioned by the Bankruptcy Court or this Court, Lagrotteria would be unsuspectingly saddled with the right of *every* creditor to object to dischargeability of his, her or its

debt. That would wholly deprive Lagrotteria's counsel of the opportunity to have objected before the Bankruptcy Court to such an extension. Yet Rule 4007(a) requires a showing of *cause* for such extension. As Vaccariello would have it, the Order would have granted relief to creditors who had not even essayed any demonstration of cause—and without any real notice to, or chance to object by, Lagrotteria.

"dischargeability." As *In re Griffis*, 31 B.R. 279, 282 (Bankr.D.Vt.1983) (citations omitted at each ellipsis) put it:

"Excusable neglect," as contemplated under the Code, means "the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." ... Ordinary negligence is not enough.... The standard of excusable neglect are [sic] akin to those justifying application of the doctrine of force majeure. Lack of control over events is essential.... An enlargement will not be granted where the delay could have been prevented by the diligence of the party.... Nor will the time for filing a complaint to determine dischargeability be extended where the reason for not filing earlier was a failure to discover, until after the time therefor had expired, the law relating to the filing of such petitions.... A party who fails to file on time a complaint to determine the dischargeability of a debt has the burden to show that his neglect was excusable due to circumstances which are beyond his control.

All the reasons that compelled this Court's conclusion in the first section of this opinion also undermine any notion that Vaccariello's counsel's now-claimed different reading of the Order was "excusable neglect." Those reasons need not be repeated. And they are strongly fortified by Vaccariello's lawyers' receipt, *after* the notice of Trustee's motion mailed February 6 and *before* that motion came on for hearing February 14, of the February 8 notice from another creditor (Bank) asking an extension of time for its own right to file an objection to dischargeability—precisely the same extension that Vaccariello now unpersuasively claims was covered by Trustee's motion. Were that true, why did Bank have to ask for separate relief? What prevented Vaccariello from asking the identical relief at that same time? Nothing.

But perhaps the clincher is the fact the two notices of motion—and perhaps most particularly that from Bank as another creditor—came in ample time to permit Vaccariello's preparation and filing of an objection to dischargeability of her "debt" on or before the unextended *February 15* expiration date. After all, Vaccariello's counsel had no assurance Judge Hertz would *grant* the extension on February 14, in which event any objection to dischargeability would have to be filed by February 15 in all events. And there was no reason for Vaccariello to wait for any other developments as a predicate for objecting to dischargeability of her "debt." Her claim and the class claims were squarely grounded in fraud and breach of fiduciary obligations, which are the specific grounds for nondischargeability under Section 523(a)(2) and 523(a)(4). Examination of Vaccariello's five-paragraph, two and one-half page complaint objecting to dischargeability, as ultimately filed March 30, shows it to be simple and straightforward, obviously having taken minimal time to prepare. Not only was Vaccariello's inaction during the entire period from the October 1983 bankruptcy filing to the date of Fosco's February 10 assignment to the matter an inexcusable delay, but the few days from February 10 to February 15—in the face of the two notices of motion specifically calling attention to the February 15 expiration date—were far more than enough to produce the end product complaint whose untimeliness has generated the present dispute.

Vaccariello's second string to her bow has thus proved as fragile as the first. It too cannot propel an arrow to the desired target. Indeed the arguments sought to be advanced by Vaccariello demonstrate a quiver without arrows, as well as a bow without strings.

### Conclusion

Vaccariello's complaint to the dischargeability of her debt and that of the class she represents was untimely, and that untimeliness was not remediable under Rule 9006(b)(1) for two independent reasons. Judge Hertz's decision now on appeal is affirmed. This action is dismissed on the merits.

## APPENDIX 1

## APPENDIX I

RESET                                                                    RESET

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE  Lawrence B. lagrotteria            )        IN BANKRUPTCY
                                          )        83 B 13253
                                          )
                    Debtor     )

ORDER FIXING TIMES FOR FILING OBJECTIONS TO DISCHARGE AND FOR FILING COMPLAINTS TO
DETERMINE DISCHARGEABILITY OF CERTAIN DEBTS, COMBINED WITH NOTICE THEREOF AND
OF MEETING OF CREDITORS AND OF AUTOMATIC STAY

To the debtor, his/her creditors, and other parties in interest:
An order for relief under 11 USC chapter 7 having been entered on a petition filed by (or against):

Lawrence B. Lagrotteria _____ of  915 Elm Place, Glencoe, IL 60022 _____, on
_____October 27, 1983_____, it is ordered, and notice is hereby given, that
   1.  (If the debtor is an individual)
   __February 15, 1984_____is fixed as the last day for the filing of objections to the
discharge of the debtor. Pursuant to 11 U.S.C. § 727
   2.  (If the debtor is an individual)
   _____February 15, 1984_____is fixed as the last day for the filing of a complaint to determine
the dischargeability of a debt pursuant to 11 USC §523(c).
   You are further notified that:
   The United States Trustee has called a meeting of creditors pursuant to 11 USC §341(a) which
shall be held at:

____Insurance Exchange Building 175 W. Jackson Blvd. Room a-1151 Chicago, IL 60604_____, on
_____January 11, 1984_____at _____2:15 p.m.

   The debtor shall appear in person (or, if the debtor is a partnership, by a general partner,
or, if the debtor is a corporation, by its president or other executive officer) at that time
and place for the purpose of being examined.
   The meeting may be continued or adjourned from time to time by notice at the meeting, without
further notice to creditors.
   At the meeting the creditors may file their claims, elect a trustee as permitted by law, (if
appropriate) designate a person to supervise the meeting, elect a committee of creditors, examine
the debtor, and transact such other business as may properly come before the meeting.
   As a result of the filing of the petition, certain acts and proceedings against the debtor and
his/her property are stayed as provided in 11 USC §362(a).
   (If the debtor is an individual)  If no objection to the discharge of the debtor is filed on
or before the last day fixed therefor as stated in subparagraph 1 above, the debtor will be
granted his/her discharge.  If no complaint to determine the dischargeability of a debt under
clause (2), (4) or (6) of 11 USC §523(a) is filed within the time fixed therefor as stated
in subparagraph 2 above, the debt may be discharged.
   In order to have his/her claim allowed so that he/she may share in any distribution from the
estate, a creditor must file a claim, whether or not he/she is included in the list of creditors
filed by the debtor.  Claims which are not filed within 90 Days after the above date set for the
meeting of creditors will not be allowed, except as otherwise provided by law.  A claim may be
filed in the office of the undersigned bankruptcy judge on an official form prescribed for a
proof of claim.
   Unless the court extends the time, any objection to the debtor's claim of exempt property
(Schedule B-4) must be filed within 30 days after the conclusion of the meeting of creditors.

   Glenn Heyman _____ of 120 S. LaSalle St. Suite 1845 Chicago, IL 60603
has been appointed interim trustee of the estate of the above-named debtor.
Date:   December 1, 1983                      PH: (312) 641-6777

Debtor's attorney: Norman B. Newman          BY THE COURT:
                   115 South LaSalle St.
                   Chicago, IL 60603          _____Frederick J. Hertz_____
                   (312) 443-1772   EXHIBIT   Bankruptcy Judge

                                    UST-44-07-24-631
                                    (June 15, 1981)