### In re Lowell & Kay SHELTON, Debtors.

### MANUFACTURERS HANOVER TRUST, Plaintiff,

v.

### Lowell & Kay SHELTON, Defendants.

**Bankruptcy No. 85 B 2195.**
**Adv. No. 85 A 1462.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 10, 1986.

---

**3.** *See* footnote 2.

Steven J. Sensibar, Law Offices of Lawrence Friedman, Chicago, for plaintiff Mfrs. Hanover.

Samuel Z. Goldfarb, Chicago, for Kay Ellen Hanselman.

Juergensmeyer & Assoc., Elgin, for Lowell Wayne Shelton.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

The plaintiff, Manufacturers Hanover Trust ("the Bank"), has filed a complaint to revoke the debtors' discharge pursuant to 11 U.S.C. § 727(d). The debtors have filed a motion to dismiss the complaint. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). The facts are not in serious dispute.

According to the Bank, the debtors ran up some $3,348 in charges on their Manufacturers Hanover Mastercard prior to filing their Chapter 7 petition on February 19, 1985. The Bank claims that this credit card spree was fraudulent and that its debt should not be dischargeable under § 523(a)(2)(A). Unfortunately for the Bank, the last date for creditors to object to the dischargeability of any debt under §§ 523(a)(2), (4), or (6) was May 31, 1985.[1] The Bank never filed a timely complaint objecting to the dischargeability of its debt. In an effort to undo the running of the deadline on the time for the Bank to seek to have its claim found to be nondischargeable, the Bank now asserts that no timely complaint was filed because on May 15,

---

1. Bankruptcy Rule 4007(c) provides that a complaint to determine the dischargeability of a debt under §§ 523(a)(2), (4), or (6) must be filed within 60 days of the first date set for the creditors meeting. The first date set for the creditors meeting in this case was April 1, 1985. Due notice of the last date for filing §§ 523(a)(2), (4), or (6) complaints was given to the Bank.

1985 the debtors' attorney orally assured the Bank's attorney that the debtors would agree to reaffirm the debt to the extent of $1,700, payable in $50 monthly installments. On that same date the Bank's attorney sent a reaffirmation agreement reflecting those terms to the debtors' attorney. Debtor Kay Shelton admits she received the reaffirmation agreement but denies ever having told her attorney that she would enter into it.[2] The debtors never did reaffirm the debt. On July 19, 1985, they were discharged from their debts, including the debt owed to the Bank. *See* 11 U.S.C. §§ 524(a), 727(b). The debtors' discharge hearing under § 524(d) was held on August 6, 1985.

A creditor or trustee may seek to revoke a discharge under 11 U.S.C. § 727(d). That section provides *inter alia* that "the court shall revoke a discharge granted under section (a) of this section if—(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge ..." Counsel for the Bank and the debtors have focused on two of the requirements for revoking a discharge under § 727(d)(1): (1) whether the debtors defrauded the Bank by causing it to forego filing an objection to the dischargeability of its debt and (2) whether the Bank was unaware of such fraud until after the debtors were granted a discharge.

■ The Court does not have to address either issue because the Bank has never argued that the debtors obtained their *discharge* through fraud, which is a prerequisite to the revocation of a discharge under § 727(d)(1). 11 U.S.C. § 727(d)(1); *In re Peli*, 31 B.R. 952, 955 (Bankr.E.D.N.Y. 1983). The Bank has only alleged that the debtors' alleged fraud caused its debt to be nondischargeable. Discharge and dischargeability are two entirely separate issues in a bankruptcy proceeding. A Chapter 7 discharge relieves a debtor from all dischargeable debts that the debtor owed

on the date of the order for relief. 11 U.S.C. § 727(b). The grounds for denying the dischargeability of a debt are set forth in 11 U.S.C. §§ 523(a) and (b). The grounds for denying a Chapter 7 debtor a discharge are set forth in 11 U.S.C. § 727(a).

■ Section 727(d)(1) provides that a court "shall revoke a *discharge granted under subsection (a) of this section* if *such discharge*" was obtained through fraud. (emphasis added). Thus, a court can only revoke a discharge if the debtor would not have been discharged pursuant to § 727(a) absent the newly discovered fraud. The Bank in this case is not trying to block the debtors' discharge. Instead it is merely seeking to have its claim against the debtors found to be nondischargeable. Nevertheless it is the Bank's position that the Court must revoke the debtors' discharge because its debt would not have been discharged pursuant to § 523(a)(2)(A) absent the alleged fraud of the debtors in lulling the Bank into not filing a complaint objecting to dischargeability. Even if the Court revoked the discharge and then held that the Bank's debt was nondischargeable under § 523(a)(2)(A), it is clear that the debtors would be granted a discharge of all of their other debts. Section 727 deals with discharge, not dischargeability. Because the Bank has raised no grounds for objecting to the debtors' discharge based on any grounds listed in § 727(a), it cannot seek to revoke the debtors' discharge under § 727(d)(1).

■ Aside from the plain language of § 727(d)(1) there is ample reason under the Bankruptcy Code and Rules to limit the availability of the Draconian remedy of discharge revocation to parties claiming a debtor obtained a discharge through fraud. The Bank had available to it a simple and inexpensive remedy when the allegedly promised reaffirmation was not forthcoming. Rule 4007(c) provides that a creditor "shall" file a complaint to determine the

---

**2.** The debtors have each retained separate counsel in this adversary proceeding. Neither counsel represented the debtors in negotiating the

alleged reaffirmation agreement in issue in this dispute.

dischargeability of a debt under §§ 523(a)(2), (4), or (6) within 60 days of the first date set for the creditors meeting. However, that Rule further states that the court may grant a creditor's motion to extend the time for cause shown. Of course, the Court may grant such an extension only if the motion is made before time has expired. The time limitations of Rule 4007 and the procedure for extending them are set in stone. *See* Bankruptcy Rule 9006(b)(3) ("The court may enlarge the time for taking action under Rules ... 4007(c) ... only to the extent and under the conditions stated in those rules."); *Vaccariello v. LaGrotteria,* 43 B.R. 1007, 1013 (D.Ct.N.D.Ill.1984); *In re Gardner,* 55 B.R. 89, 90 (Bankr.D.C.1985); *In re Maher,* 51 B.R. 848, 859-51 (Bankr.N.D.Iowa 1985); *In re Ensminger,* 42 B.R. 548, 550, 551 (Bankr.W.D.Okla.1984).

■ There is no recourse for a party who fails to file a timely complaint objecting to the dischargeability of a debt under §§ 523(a)(2), (4), or (6) or to move in a timely fashion for an extension of the period within which to file a complaint. If the Bank's allegations are true, the debtors in this case may have connived with their former attorney to convince the Bank to forego filing a complaint objecting to the dischargeability of its claim. However, that question is simply irrelevant. The Bank's choices when it failed to receive a signed reaffirmation by late May 1985 were obvious. The Bank should have either filed a complaint objecting to dischargeability or moved for an extension of time in accordance with the time restrictions of Rule 4007(c).[3] *In re McElmurry,* 23 B.R. 533, 536 (W.D.Mo.1982); *In re Kirschner,* 46 B.R. 583, 587-88 (Bankr.E.D.N.Y.1985). The Bank was aware of the last date for filing objections to the dischargeability of debts under §§ 523(a)(2), (4), or (6). It also knew that it had not received a signed copy of the reaffirmation agreement from the debtors before the time period lapsed. Prudence (not to mention the Bankruptcy Code and Rules) dictated that it should have at least moved to extend the time period for filing objections. *Id. See also In re Ensminger,* 42 B.R. 548, 551 (Bankr.W.D.Okla.1984); *In re Garfinkle,* 2 B.R. 65, 68 (Bankr.S.D.N.Y.1979).[4]

3. The Bank claims that it should be able to rely on an attorney's word and not have to spend $60 to file a complaint objecting to dischargeability "just in case" the debtors failed to reaffirm. That argument is without merit. It does not cost a party one dime in court costs to move for an extension of time within which to file a complaint pursuant to Rule 4007(c). The time extension would afford the Bank an opportunity to determine whether the debtors really intended to reaffirm the debt or not. If not, the Bank would still have time to file a complaint to except its debt from discharge. It is worth noting that the logic of the Bank's argument is further weakened by the fact that if the Bankruptcy Code and Rules contemplated the course of action taken by the Bank, the Bank would still have to pay a $60 fee to file this complaint seeking to revoke the debtors' discharge. *See* Bankruptcy Rule 7001(4).

4. In fact, it appears to the Court that there is a fundamental fallacy in the entire approach taken by the Bank here. The Bank's complaint is premised on the fact that it was willing to accept a reaffirmation in lieu of a finding of nondischargeability. Such a reaffirmation, to be valid, would have to contain certain disclosures, be accompanied by a statement of the debtors' counsel that the debtors have been given certain advice and warnings, and be filed with the Court in advance of the debtors' discharge. 11 U.S.C. § 524(c)(1)–(3). In addition for the reaffirmation to be valid, the debtors would have to attend the discharge hearing and be warned by the judge. *See In re Roth,* 43 B.R. 484 (N.D.Ill.1984). Finally, the debtor would have 60 days from the time of the reaffirmation hearing, or until the discharge hearing, whichever is later, to rescind the reaffirmation. Suppose the debtors entered into this reaffirmation agreement in good faith, then honestly determined that in fact they could not afford the $50 a month they allegedly were supposed to pay, and rescinded the agreement within the 60 day recession period, say on day 59. The Bank's time for objecting to dischargeability would have long run under Bankruptcy Rule 4007(c). *There would be no conceivable fraud for alleged § 727(d) purposes.* What would the Bank have the Court do in such circumstances? ·

The result seems clear and in accord with the Congressional intention underlying §§ 523 and 524 to afford a debtor a chance for meaningful fresh start. Reaffirmation is not a substitute for dischargeability determination. The latter is under judicial control; the former realistically is not after the Bankruptcy Amendments and Federal Judgeship Act of 1984. Threats to file spurious dischargeability complaints should not

Bankruptcy Rules 4007(c) and 9006(b)(3) leave no room for the legal maneuvering attempted by the Bank in this case. The Bankruptcy Code and Rules set out a procedure for securing a prompt determination in the Bankruptcy Court of any issue of whether a claim is dischargeable under §§ 523(a)(2), (4), or (6) in order to foster a debtor's fresh start. This process is intended to shield debtors from post discharge harassment by creditors alleging that their claims are nondischargeable on grounds of fraud and the like. *See* Countryman, "The New Dischargeability Law", 45 Am.Bankr.L.J. 1 (1971). These debtors have suffered exactly the type of creditor pressure the process set up by the Bankruptcy Code and Rules was meant to avoid. It is crucial for creditors' counsel to comply with the rules. No "end run" will be permitted. The debtors' motion to dismiss the Bank's complaint to revoke the debtors' discharge for failure to state a cause of action is granted.

lead to reaffirmation. *Cf.* Countryman, "The New Dischargeability Law", 45 Am.Bankr.L.J. 1 (1971). If there is a legitimate objection to dischargeability, a complaint should be filed and a judicial determination obtained that the debt is in fact nondischargeable by litigation or

agreed order reviewed by the Court. This approach best protects the interest of both debtors and creditors.