**In re Glen A. KIRSCH, Debtor.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, assignee of Continental Illinois National Bank and Trust Company of Chicago, Plaintiff,**

v.

**Glen A. KIRSCH, Defendant.**

**Bankruptcy No. 85B2471.**
**Adv. No. 85A754.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 1, 1986.

Edward R. Jordon, Wheeling, Ala., for FDIC.

Bruce L. Wald, Tischler & Wald, Chicago, Ill., for Kirsch.

## MEMORANDUM AND DECISION

ROBERT E. GINSBERG, Bankruptcy Judge.

The facts that have brought the present question before the court are undisputed. They are also somewhat bizarre. Glen Kirsch went into the oil business in a serious way in the early 1980's. He owned a number of leases for various properties in Illinois. He invested in other leaseholds in Kentucky and Texas. His success in the oil business was short lived. In the late 1984 and the early 1985, a combination of a collapsing oil market and a messy divorce proceeding caused his oil business to fail. On February 7, 1985, Mr. Kirsch filed a Chapter 7 petition.

On July 3, 1985, the Federal Deposit Insurance Corporation ("FDIC"), as successor to the Continental Illinois Bank, filed a complaint objecting to the dischargeability of the debt which Mr. Kirsch owed to it. In its complaint, the FDIC asserted that Continental Illinois had been induced by Mr. Kirsch to lend him some $94,000 and from time to time to extend or continue that loan through the use of a series of false financial statements Mr. Kirsch had provided to the Bank. *See* 11 U.S.C. § 523(a)(2)(B). On August 2, 1985 the debtor's then attorneys filed an answer to the complaint. A pretrial was scheduled and held on April 4, 1986. The parties were required by the Court order to file a joint preliminary pretrial statement with

the Court in advance of that pretrial outlining all contested and uncontested issues of law and fact, as well as summarizing the positions of each side. That statement was prepared and filed with the Court on April 2, 1986. Trial was set for June 11, 1986.

On April 16, 1986 Mr. Kirsch's former attorney sought to withdraw from the case and all pending adversary proceedings. The Court held a hearing on the motion and determined that the attorneys were seeking to withdraw because they had not been paid by the debtor for his services in connection with several nondischargeability actions then pending in this Court. The Court further learned that Mr. Kirsch was now employed as president of a cable television company at a base salary of at least $60,000 a year. The Court concluded that with some minor reductions in lifestyle, Mr. Kirsch should be able to compensate his attorneys for their services. Mr. Kirsch chose not to pay his then attorneys, and they were therefore allowed to withdraw.

Mr. Kirsch had no difficulty retaining successor counsel to represent him in connection with several nondischargeability actions involving his ex-wife. However, as the trial date of the FDIC nondischargeability complaint approached, Mr. Kirsch had yet to retain successor counsel to represent him in the FDIC adversary. Finally, some 12 days in advance of trial, the law firm of Tishler and Wald, Ltd. appeared in the FDIC adversary. That firm, through yeoman's efforts, managed to comply with the Court's detailed pretrial order in an appropriate and timely manner and to prepare for trial. The trial was conducted over parts of three days, and was very well handled on both sides. At the close of the trial, the Court found for the FDIC and held that the debt which Mr. Kirsch owed to it was nondischargeable because of the debtor's use of several false financial statements in connection with extensions of that loan.

On August 7, 1986, some 31 days after the trial and verdict, Mr. Kirsch's successor attorneys called to this Court's attention for the first time the fact that the FDIC's dischargeability complaint was filed on July 3, 1985, more than 30 days after the June 1, 1985 deadline fixed by this Court as the last day for filing complaints asserting nondischargeability under §§ 523(a)(2), (4), and (6) of the Bankruptcy Code. *See* 11 U.S.C. § 523(c) and Bankruptcy Rules 4007(c), 9006(b). There is no doubt that the complaint was filed late and that the FDIC never sought to extend the time for filing complaints to determine dischargeability. The question now before the Court is whether the debtor waived his right to object to the late filing of the instant complaint by failing to raise the question until after trial and verdict or whether the deadline for filing complaints is jurisdictional and cannot be waived.

Bankruptcy Rule 4007(c) provides complaints to determine the dischargeability of certain debts under § 523 of the Bankruptcy Code must be filed within 60 days of the first date set for the meeting of the creditors. If under Rule 4007(c) a complaint alleging that a debt is nondischargeable under § 523(a)(2) (fraud or false financial statements), § 523(a)(4) (fraud or defalcation by a fiduciary, embezzlement or larceny) or § 523(a)(6) (willful and malicious injuries to persons or property), is filed late all debts which might otherwise be nondischargeable under those provisions are in fact discharged regardless of how good a case for nondischargeability a creditor might have on the merits. Once the Rule 4007(c) time has elapsed, a properly scheduled creditor can never raise the question of the nondischargeability of a claim on any of these grounds in the Bankruptcy Court or in any other forum. *Compare* § 523(a)(3)[1].

The result is automatic and sometimes leads to harsh results. However, Congress intended to establish a system whereby

---

**1.** This rule does not apply when dischargeability complaints are filed under any other paragraph of § 523(a). *See* Bankr.R. 4007(b).

certain types of nondischargeability claims would be automatically cut off after a relatively short period of limitations in order to prevent debtors from being harassed by creditors after their claims had been discharged in bankruptcy. Congress meant to cure the abuse whereby debtors were routinely sued by creditors long after bankruptcy creditors claiming that their claims were not discharged because of fraud or a false financial statement. *See* Countryman, "The New Dischargeability Law", 45 Am.Bankr.L.J. 1 (1971). This policy underlies § 523(c) of the Bankruptcy Code.

█ Bankruptcy Rules 4007(c) and 9006(b)(3) implement the § 523(c) policy. The deadline fixed by Rule 4007(c) is set in stone by Rule 9006(b)(3). The latter rule makes it clear that the Rule 4007(c) time can only be extended by motion filed before the Rule 4007(c) time expires. Once the time expires, it cannot be extended on grounds of excusable neglect or otherwise. *In re Shelton*, 58 B.R. 746, 748–49 (Bankr. N.D.Ill.1986); *In re Lane*, 37 B.R. 410, 414 (Bankr.E.D.Va.1984); *In re Whitfield*, 41 B.R. 734, 736 (Bankr.W.D.Ark.1984). Here the time ran. No extension was sought by the FDIC before it ran. Instead, it simply filed its complaint some 30 days after the Rule 4007(c) time had expired.

█ The FDIC now asserts that it should be allowed to file its complaint late based on grounds of excusable neglect and/or reliance or that the court should exercise its discretion to extend the Rule 4007(c) time *nunc pro tunc* to the date the FDIC filed its complaint. The gist of the excusable neglect request is that plaintiff's attorney, who is a suburban practicioner, felt he had to rely on FDIC agents to determine the Rule 4007(c) deadline by checking with clerk's office in Chicago. Those agents were misled by the Court's docket sheet which appeared to show that July 30, 1985 was the last date for filing § 523(c) complaints. In fact, the Court had never extended the Rule 4007(c) deadline. Instead,

the July 30, 1985 deadline applied only to certain creditors who had been added to the schedules after the petition by the debtor. *See* § 523(a)(3). The order was mistakenly described on the Court's docket by a deputy in the Bankruptcy Clerk's office. No order extending the time to file complaints for all creditors to July 30, 1985 was ever entered. The short answer to the *nunc pro tunc* request is that this Court has no discretion to extend the Rule 4007(c) time *nunc pro tunc*. Bankruptcy Rule 9006(b)(3) eliminates such discretion. *Shelton*, 58 B.R. at 749; *Lane*, 37 B.R. at 414; *Whitfield*, 41 Bankr. at 736. Once the time runs it cannot be extended *nunc pro tunc* or otherwise. Similarly, Bankruptcy Rule 9006(b)(3) precludes any extension of the Rule 4007(c) time after expiration on the grounds of excusable neglect or reliance.[2]

The fact that excusable neglect and reliance are no longer defenses to the expiration is made clear by cases such as *Vaccariello v. LaGrotteria*, 43 B.R. 1007 (N.D.Ill. 1984) and *In re Farmer*, 786 F.2d 618 (4th Cir.1986). These cases have held that where a trustee files a timely motion to extend the Rule 4007(c) deadline before it expires on behalf of all creditors and in fact obtains an order extending the time, such an order is ineffective for lack of standing on the part of the trustees. Thus a creditor who relies on the trustee's motion, allows the original Rule 4007(c) time to expire and then file a § 523(c) complaint with the time fixed by the court order on the trustee's extension motion is out of luck. The complaint must be dismissed as untimely filed. It is hard to see how the plaintiff here can claim reliance on a mistaken docket reference that an extension order had been entered when a creditor is not allowed to an extension order actually, but mistakenly entered. If the trustee in this case had actually obtained an order extending the Rule 4007(c) deadline to July 30, 1985, as the docket suggested, the extension would have been of no use to the

---

**2.** FDIC's reliance on Rule 9006(b)(1) and related case law is misplaced. The analysis in this decision must focus on Rule 9006(b)(3), not Rule 9006(b)(1) as the former specifically references Rule 4007(c) and the latter does not.

FDIC. At a minimum, the FDIC should have determined who obtained the extension and for whose benefit. Such a check would, of course, have revealed the docket error. In fact, the only way the FDIC could have been perfectly safe would have been to obtain its own extension before the expiration of the June 1, 1985 deadline.

■ In fact, the FDIC has a weak excusable neglect or reliance case on the facts of this case. FDIC counsel suggests that he was rushed to get his complaint on file, that Rule 11 of the Federal Rules of Civil Procedure required some prefiling discovery, and as a result he missed the Rule 4007(c) deadline. The fallacy in this argument is that the FDIC did not have to get a complaint filed by the deadline. It could have filed a motion for an extension before the deadline, set out its discovery problems, and have obtained an extension. Such extensions are routinely granted wherever a reasonable possibility of a § 523(c) complaint exists. This would have obviated the Rule 11 problems and the FDIC's present difficulties. *Vaccariello,* which predates all of the facts of this case makes it clear that reliance on anybody else's Rule 4007(c) extension is imprudent. The FDIC easily could have and should have obtained its own extension.

■ Once the excusable neglect and reliance arguments are disposed of, the remaining question is whether the debtor's actions of answering the complaint, going through the pretrial process and going to trial without raising the Rule 4007(c) issue waived his right to object to the timeliness of the FDIC complaint. If Bankruptcy Rules 4007(c) and 9006(b)(3) merely set a procedural statute of limitations such must be raised by affirmative defense or it is waived. *See generally Pinto Trucking Services, Inc. v. Motor Dispatch, Inc.,* 649 F.2d 530 (7th Cir.1981); Bankr.R. 7012(b) (F.R.Civ.P. 12(b)–(h) applies in adversary

proceedings). On the other hand, if the deadlines fixed by Bankruptcy Rules 4007(c) and 9006(b)(3) is jurisdictional it cannot be waived. *See In re Harlow Properties, Inc.,* 56 B.R. 794, 796 (Bankr.9th Cir.1985); *Dunlap v. Aulson Corp.,* 90 F.R.D. 647, 653 (N.H.1981). As best this Court can tell the question is one of first impression. However, Bankruptcy Rule 9006(b) is modeled upon F.R.Civ.P. 6(b) which provides:

> (b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), 60(b), and 74(a), except to the extent and under the conditions stated in them.[3]

Both F.R.Civ.P. 6(b) and Bankr.R. 9006(b) list a number of situations where a court may enlarge the time for taking action under certain rules of bankruptcy or civil procedure only to the extent and under the conditions stated in those rules. Because of the similarities between Bankr.R. 9006(b) and F.R.Civ.P. 6(b) an analysis of the case law under F.R.Civ.P. 6(b) and the rules listed within that subdivision should shed light on the proper way to apply Bankruptcy Rules 4007(c) and 9006(d).

In 1961, the Seventh Circuit had an opportunity to analyze F.R.Civ.P. 6(b) in *Hulson v. Atchinson, Topeka & Santa Fe Railway Co.,* 289 F.2d 726 (7th Cir.1961).[4]

---

**3.** See Advisory Committee Bankruptcy Rule 9006. The Bankruptcy Rule is also modelled on Federal Rule of Appellate Procedure 26(b).

**4.** In *Hulson* the court looked at the version of Rule 6(b) then in effect. A number of amend-

ments were made to Rule 6(b) none of which have affected the holding in *Hulson.* In 1963 the prohibition against extending the time for taking action under Rule 25 was eliminated. The 1968 amendment to Rule 6(b) eliminated

In *Hulson,* plaintiffs were appealing from the district court's order denying their motions for a new trial and a judgment not withstanding the verdict. On June 7, 1960, after the close of all the evidence plaintiffs moved for directed verdict. The motion was denied. Later that same day the jury found the defendant "not guilty" as to both plaintiffs. On June 16, 1960 plaintiffs filed a notice that they would appear before trial court and present a motion to be "granted a reasonable time to amend their motion for a new trial by making specific objections to specific instructions."

On June 27, 1960 the plaintiffs filed, for the first time, their motion for a judgment notwithstanding the verdict and in the alternative a motion for a new trial. On July 1, 1960 plaintiffs filed their brief in support of their motion. On July 8, 1960 defendant filed affidavits in opposition to plaintiffs' affidavit and on July 15, 1960 defendant filed its brief opposing plaintiffs' motions.

On July 15, 1960 defendant also filed a motion to strike plaintiffs' motions for judgment notwithstanding the verdict and for a new trial. The basis of defendant's motion to strike was that plaintiffs' motions were not properly filed within the time limits in Rules 50(b) [5] and 59(b), (d) and (e) [6] of the Federal Rules of Civil Procedure. In addition the defendant stated that the trial court was prohibited from enlarging the time in which to file such motions by the provisions of F.R.Civ.P. 6(b).

The Seventh Circuit held that since plaintiffs' motion for a judgment not withstanding the verdict was not made within the limitation imposed by Rule 50(b) that "the rule forbids the trial judge or an appelate

court to enter such a judgment." *Hulson,* 289 F.2d at 729 (quoting *Johnson v. New York,* 344 U.S. 48, 50, 73 S.Ct. 125, 127, 97 L.Ed.2d 77 (1952) (citations omitted)). In addition, Rules 59(b), (d) and (e) prohibit the trial court from granting a motion for a new trial not made within the time limitation. The *Hulson* Court quoting with approval *Fine v. Paramount Pictures,* 181 F.2d 300, 303 (7th Cir.1950), stated *"[t]he trial court did not have jurisdiction to hear and pass on reasons for a new trial which were not assigned and served on the defendants within ten days after the judgment."* (emphasis added)

Lack of jurisdiction prevented the court in *Hulson* and *Fine* from even hearing and passing on the reasons for a new trial. Similarly, it is the lack of jurisdiction in the present case which forces this court to dismiss FDIC's complaint to determine the dischargeability of the debt. The Court does so with great regret but does so because of its conviction that it is powerless to do anything else.

The Seventh Circuit in *Hulson* held that counsel cannot waive the strict requirements of the rules. In *Hulson* defendant and plaintiffs had briefed the motions for a judgment not withstanding the verdict and for a new trial. In the present case a trial had already been held and a verdict rendered. However, in this case as in *Hulson,* the fact that former counsel answered the adversary complaint, participated in the pretrial process and participated in the trial does not constitute a waiver, because there can be no waiver. This interpretation of Rules 9006(b)(3) and 4007(c) accords with the general rule that discharge and dis-

the reference Rule 73. Finally in 1983 Rule 6(b) was amended to confer finality upon the judgments of magistrates by foreclosing enlargement of the time for appeal except as provided in Rule 74(a).

**5.** Under the version of Rule 50(b) in effect in 1960 plaintiffs were required to move for motion for a judgment not withstanding the verdict "[w]ithin 10 days after the reception of a verdict, * * *." F.R.Civ.P. 50(b).

**6.** Under the version of Rule 59(b) in effect in 1960 "[a] motion for a new trial shall be served not later than 10 days after the entry of the judgment"; under subsection (d) the trial court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party "[n]ot later than 10 days after entry of judgment"; and under subsection (e) "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." F.R.Civ.P. 59(b), (d) and (e).

chargeability law and procedure is to be interpreted strictly against creditors and in favor of debtors to promote a debtor's fresh start. *See In re Marino*, 29 B.R. 797, 798–99 (N.D.Ind.1983); *Shelton*, 58 B.R. at 749–50. This approach also implements the Congressional policy underlying § 523(c). It prevents the readily forseeable situation of an unrepresented consumer debtor inadvertently waiving the benefits Congress so carefully gave such debtors in § 523(c) by defending an untimely 523(c) complaint on the merits. *See* Countryman, "The New Dischargeability Law", 45 Am. Bankr.L.J. 1 (1971).

In addition, on the facts of this case, the equities favor the debtor. The FDIC could have avoided the present difficulties by either filing a timely complaint or obtaining a timely Rule 4007(c) extension. Also, relatively early on at trial, the Court inquired of counsel for the FDIC whether the Rule 4007(c) time had been extended. Had an accurate answer to this question been forthcoming, the Court would have immediately dismissed the complaint on its own or debtor's motion, thus saving a great deal of judicial and counsel time. No verdict for the FDIC would ever have been entered. *See* Bankruptcy Rule 9024; F.R.Civ.P. 60(b). Nothing the debtor has done would estop him from asserting the Rule 4007(c) deadline even at this late date.

■ Finally, debtor's request for attorney's fees for the prosecution of this complaint must be denied. There is no authority for such an award under the Bankruptcy Code. Because the debt at issue is not a consumer debt § 523(d) of the Bankruptcy Code does not apply. *See* 11 U.S.C. § 101(7). In addition, this is hardly a case for sanctions under either Bankr.R. 9011, F.R.Civ.P. 11 or 28 U.S.C. § 1927. The debtor's attorneys were no more entitled to rely on the mistaken docket entry than was the FDIC's lawyer. Both debtor's original attorney and the successor firms are experienced in bankruptcy matters. A careful examination of the file by either of them would have shortened these proceedings greatly.

It is therefore ordered:

(1) The verdict in favor of the FDIC is vacated.

(2) The complaint is dismissed with prejudice.

(3) The debtor's request for attorneys fees is denied.