**In re AARGUS POLYBAG COMPANY, INC., Imperial Bag Co., and Sak Pak, Debtors.**

**AARGUS POLYBAG COMPANY, INC., as Debtor in Possession, Plaintiff,**

**v.**

**COMMONWEALTH EDISON CO., INC., et al., Defendants.**

**Bankruptcy Nos. 92 B 13688, 92 B 13690. Adv. No. 93 A 1458.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Oct. 3, 1994.

Michael J. Keaton, John S. Delnero, Dennis E. Quaid, Fagel & Haber, Chicago, IL, for debtor/plaintiff.

Jennifer L. Sucher, Elizabeth Hoskins Dow, Lord, Bissell & Brook, Chicago, IL, for Commonwealth Edison Co., Inc., defendant.

Denise DeLaurent, Office of the U.S. Trustee, Dept. of Justice, Chicago, IL, for U.S. Trustee.

Richard M. Bendix, Richard T. Reibman, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for LaSalle Nat. Bank.

David Golin, Rosenthal & Schanfield, Chicago, IL, for Creditors' Committee.

Kenda Tomes, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Mass Polymers Corp.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

### I. INTRODUCTION

The Debtors, Aargus Polybag Co., Inc., Imperial Bag Co., Inc., and Sac Pak, (herein referred to as the "Debtors") were manufacturers of polyurethane goods. The plaintiff in this adversary proceeding is one of the Debtors, Aargus Polybag Co., Inc., ("Aargus"). Commonwealth Edison Co., Inc., ("Commonwealth Edison") supplied electricity to Aargus before and after the filing of the chapter 11 petition that commenced this case. This adversary proceeding is an action by

Aargus to recover $28,832.35 paid to Commonwealth Edison post-petition for utility services received pre-petition. Aargus has moved for judgment on the pleadings with respect to this claim. Commonwealth Edison asserts a right to setoff. It argues that it is entitled to offset the amount owed to Aargus against its alleged administrative expense claim of $31,567.85 for the post-petition supply of electricity to Aargus. The Court finds that (1) the $28,832.35 payment is properly avoided and recoverable by the estate under 11 U.S.C. § 549[1] and § 550, and (2) Commonwealth Edison's request for payment of administrative expenses is denied.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding under 28 U.S.C. §§ 157(b)(2)(F) and (O).

## II. FACTS

Commonwealth Edison provided the electricity Aargus used in the business of manufacturing polyurethane goods. On June 18, 1992, (the "Petition Date") Aargus filed its voluntary petition for relief under chapter 11. On July 7, 1992, (after the Petition Date) Aargus paid $28,832.35 for electricity it used between May 19, 1992 and June 18, 1992 (before the Petition Date).

Commonwealth Edison continued to provide electricity to Aargus after the Petition Date. The Court entered an order on July 26, 1993 setting September 1, 1993 as the date by which all administrative and post-petition claims were to be filed. Aargus served notice of that date on all creditors, including Commonwealth Edison, on July 21, 1993. On January 26, 1994, the Court confirmed Aargus' chapter 11 plan, which provides for the liquidation of Aargus' assets and the distribution of the proceeds to creditors in accordance with bankruptcy priorities. Count V of the complaint in this adversary proceeding, filed on November 17, 1993, seeks the return of the $28,832.35 post-petition payment to Commonwealth Edison for pre-petition utility services. Commonwealth Edison filed its answer on April 21, 1994.

On May 24, 1994, it incorrectly filed a pre-petition proof of claim form requesting the payment of administrative expenses of $31,-567.85 for electricity supplied after the Petition Date, from June 18, 1992 until April 16, 1993. Commonwealth Edison filed an amended answer on June 2, 1994 in which it admits the material allegations of Count V of the complaint, but claims a right to setoff the amount due for post-petition services.

Aargus filed its motion for Judgment on the Pleadings as to Count V on May 10, 1994. On June 13, 1994, Commonwealth Edison filed its response to the motion. In that response, Commonwealth Edison made another request for payment of administrative expenses of $31,567.35 for the post-petition electricity. It asserted a right to offset that amount against the post-petition transfer as its only defense to the motion.

Aargus objects to the administrative expense claim on the grounds that after receiving conspicuous notice on July 21, 1993 of the September 1 bar date, Commonwealth Edison had neither filed its claim by that date, nor moved the Court to extend the time to file its alleged administrative expense claim for reasons of "excusable neglect" under Bankruptcy Rule 9006(b)(1).

Commonwealth Edison argues that it is entitled to payment of its administrative expense claim because its failure to file a request for the payments until eight months after the bar date was due to "excusable neglect." In the alternative, should the Court refuse to grant its claim priority status, Commonwealth Edison argues that its claim should not be denied, but should be granted third level priority behind timely-filed unsecured claims. Based on either characterization of its claim, Commonwealth Edison asserts its right to offset the amounts it owes to Aargus.

## III. ANALYSIS

Under Federal Rule of Civil Procedure 12(c), "a motion for judgment on the pleadings is properly granted if the undisput-

---

1. Unless otherwise indicated, all statutory citations refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

ed facts appearing in the pleading, supplemented by any facts of which the court should take judicial notice, clearly entitle the moving party to judgment as a matter of law." *In re Amica, Inc.*, 130 B.R. 792, 795 (Bankr.N.D.Ill.1991). "[A] plaintiff may not win judgment on the pleadings when a defendant's pleadings raise issues of fact which would defeat recovery if proven." *Id.* at 795.

Commonwealth Edison asserts only one ground to defeat recovery: it is entitled to a setoff against the Aargus' claim for the amount of the post-petition payment. It seeks to offset the amount it is owed as an alleged administrative expense for post-petition electricity in the amount of $31,567.85 against the unauthorized transfer of $28,-832.35 that the estate is otherwise admittedly entitled to recover. Setoff is available to a creditor when mutual pre-petition debts exist between the creditor and the debtor. Therefore, to determine if the Debtor is entitled to judgment on the pleadings with respect to its claim or if, alternatively, setoff is available to Commonwealth Edison, the nature of the parties' claims must be established.

### a. Post-petition Transaction—The Debtor's § 549 Claim

■ Section 549 empowers a debtor in possession[2] to avoid a transfer of property of the estate (1) that was made after the commencement of the bankruptcy case, and (2) was unauthorized under the Bankruptcy Code or by the Court. Once the plaintiff has satisfied the requirements of § 549, it may "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from—(1) the initial transferee ..." § 550(a)(1). The transferee becomes the holder of a pre-petition claim under § 502(h) (emphasis added): "A claim arising from the recovery of property under sections 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, *the same as if such claim had arisen before the date of the filing of the petition.*" The effect of § 502(h) is to restore the creditor to the status it would have had if the avoided payment had not been made—a pre-petition creditor.

Commonwealth Edison has admitted in its Answer that it received $28,832.35 on or about July 7, 1992 for utility service provided to the Aargus between May 19, 1992 and June 18, 1992. Commonwealth Edison's Answer and Affirmative Defense at 2. The $28,832.35 payment, therefore, was made after the Petition Date. Commonwealth Edison does not allege that the Bankruptcy Code or any court order authorized that transfer of funds from the estate. Therefore, the post-petition transfer is avoidable under § 549, and Aargus is entitled to the return of the funds. § 550. As a result of this avoidance and recovery, Commonwealth Edison is entitled to an unsecured claim in the amount of $28,832.35 for which it may file proof within thirty days from the date of the judgment. Rule 3002(c). In accordance with § 502(h), this claim will be treated like other unsecured claims with respect to allowance under § 502.

### b. Administrative Expense Claim For Post-petition Utility Services

Administrative expense claims are "the actual and necessary costs and expenses of preserving the estate," and are granted first priority in the distribution of the debtor's estate. §§ 503(b)(1)(A) and 507(a)(1). These claims must be filed by the court-ordered bar date to "enable the debtor and [its] creditors to know, reasonably promptly, what parties are making claims and in what general amounts." *In re Pettibone Corp.*, 156 B.R. 220, 226 (Bankr.N.D.Ill.1993) quoting *Matter of Stavriotis*, 977 F.2d 1202, 1205 (7th Cir. 1992). However, the Court may extend the time to file a proof of claim "for cause shown." Rule 3003(c)(3). The meaning of "cause" is elaborated in Rule 9006(b)(1), which states "the court for cause shown may at any time in its discretion ... (2) on *motion* made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect.* " (emphasis added); *See In re Lester*

---

**2.** Section 1107(a) grants a debtor in possession "all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter."

*Witte & Co.*, 52 B.R. 436, 437 (Bankr.N.D.Ill. 1984) (the court has discretion to extend the time for filing a proof of claim); *In re Hardy*, 33 B.R. 77, 79 (Bankr.D.Nev.1983).

In *Pioneer Investment Services v. Brunswick Associates Ltd. Partnership*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court addressed what constitutes "excusable neglect" that will excuse the late filing of claims in chapter 11 cases. Examining the natural meaning of "neglect" and its analogous uses under the Federal Rules of Civil Procedure, the Court said that "[neglect] encompasses both simple, faultless omissions to act and more commonly, omissions caused by carelessness." *Id.* at ——, 113 S.Ct. at 1494. However, to determine if neglect is "excusable," the Court set forth a four prong balancing test:

(1) danger of prejudice to the debtor;

(2) the length of delay and its potential impact on judicial proceedings;

(3) the reason for the delay, including whether it was within the reasonable control of the movant; and

(4) whether the movant acted in good faith.

*Id.* at ——, 113 S.Ct. at 1498. The Court noted that even with the application of this balancing test, "the determination [of excusable] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at ——, 113 S.Ct. at 1491. After applying the balancing test, the Court found that the good faith of the creditors and their attorneys, the disruption in the respondent attorney's professional life, the inconspicuous placement of the bar date notice within a notice for a creditors' meeting, and the lack of prejudice to the debtor or impact on judicial economy warranted the allowance of the creditors' late filed claims. *Id.* at ——, 113 S.Ct. at 1499.

Commonwealth Edison argues that it is entitled to payment of its administrative claim in the amount of $31,567.85 despite its failure to file either a request for such payment by September 1, 1993, the bar date, or a Rule 9006(b)(1) motion requesting the Court to enlarge the time period to file its request. In support of the first prong of the balancing test, Commonwealth Edison states that Aargus would not be prejudiced by paying Commonwealth Edison's claim, because Aargus had received "valid and regular bills" and was aware that they were required to pay for electricity received post-petition. Commonwealth Edison's Response To Debtor's Objection To Commonwealth Edison's Claims For Administrative Expenses at 4. In support of the second prong, length of delay, Commonwealth Edison cites one case, *In re Pettibone*, 156 B.R. 220 (Bankr.N.D.Ill. 1993), that holds that four years is an "unreasonable delay," and then draws the conclusion that eight months is not unreasonable. Commonwealth Edison's Response at 3. Finally, Commonwealth states that it "clearly acted in good faith by believing that its valid claims would be paid or that it would be allowed to use the claims as setoffs." *Id.* at 4.

On procedural grounds, Commonwealth Edison failed to satisfy the requirements of Rule 9006(b)(1) when it made its request for enlargement in a responsive pleading instead of a motion.[3] However, assuming the Court were to entertain the Rule 9006(b)(1) request as made, Commonwealth Edison has not demonstrated grounds to sway the balance of the *Pioneer* test in its favor. Unlike the creditors in *Pioneer*, Commonwealth Edison received a clear and conspicuous notice announcing the September 1, 1993 bar date. *See In re Pettibone*, 156 B.R. at 228 (attorney had received several unambiguous notices announcing the bar date).

---

**3.** Commonwealth Edison's proof of administrative expense claim is also unsatisfactory. First, the claim was filed on May 24, 1994, more than eight months after the September 1, 1993 bar date. Second, Commonwealth Edison filed its claim for post-petition administrative expenses on a form that states on its face: "NOTE: This form should not be used to make a claim for an administrative expense *arising after the commencement of the case.* A 'request' of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503." (emphasis added). Therefore, this proof of claim does not change Commonwealth Edison's position with respect to its request for administrative expenses.

Additionally, Commonwealth Edison has not shown why eight months is not an unreasonable delay. The post-petition bills [4] Commonwealth Edison refers to were never paid, so it is not evident why Commonwealth Edison reasonably could have relied on those bills as reason to ignore a clearly stated "deadline of September 1, 1993 for the filing of any and all administrative or post-petition claims." Notice of Entry of Order attached as Exhibit A to Reply of Debtor to Commonwealth Edison Company's Response to Debtor's Motion for Judgment on Pleadings as to Count V.

Cases addressing this precise issue have all examined the relationship between the length of the delay and the movant's control over the circumstances causing the delay in order to determine the reasonableness of an untimely filing. *See In re Pettibone,* 156 B.R. at 228 (holding a four year delay in filing a claim was unreasonable when the attorney had received several clear notices of the bar date, but did not act); *See In re Dix,* 95 B.R. 134 (9th Cir. BAP 1988) (holding a two year delay in filing a claim was not unreasonable, because the creditor did not learn of his claim until at least a year after the bar date and then had to retain a new attorney and file his claim); *cf. In re Pyramid Energy, Ltd. (Pyramid Energy, Ltd. v. Duquoin Nat'l Bank),* 165 B.R. 249, 250 (Bankr.S.D.Ill.1994) (holding an attorney's one day delay in filing its notice of appeal was not reasonable even though the court's written order was served on the attorney just before Christmas holiday, because the court had announced its oral ruling at least a month prior and the attorney had at least one business day to file). On the scant evidence presented to the Court on this issue, it appears that Commonwealth Edison's delay was due to a conscious decision not to file a request for payment or careless neglect in filing. In either case, Commonwealth Edison has not linked its failure to timely file with a satisfactory reason.

Commonwealth Edison's claim that Aargus would not be prejudiced by an extension of the filing deadline ignores the overriding concept of equity and fairness, expressed by the Court in *Pioneer.* Aargus has filed a liquidating chapter 11, and the focus on equity and prejudice should fall on the other creditors who filed their administrative claims within the deadlines established by this Court. Those diligent creditors should not be prejudiced by allowing Commonwealth Edison to share in their class distribution. Further, to allow Commonwealth Edison's claim to be treated as other timely filed claims without a showing of "excusable neglect" would send an erroneous message that bar dates are not important. In light of the evidence presented and policy issues raised, Commonwealth Edison has not shown "excusable neglect," and its administrative expense claim is denied, because it was filed too late.

### c. Unsecured Claim Against The Debtor

■ The next question is what type of claim does Commonwealth Edison hold for the post-petition supply of utility services? The answer is, Commonwealth Edison is left with a claim against Aargus, not the estate, for $31,567.85, which it can pursue after disposition of the estate.

■ A request for payment of an administrative expense claim is a request for payment from the estate. § 503(b)(1)(A). Once such a request has been denied, the estate is no longer liable for the expense. The liability of the debtor is unaffected; that liability depends upon whether the claim is discharged. But the debtor's liability is not helpful to Commonwealth Edison's position here. The debtor in possession is acting as a representative of the estate, seeking a recovery of "property of the estate" (§ 549) "for the benefit of the estate." § 550. Setoff requires mutual debts, but that mutuality does not exist if the estate is not liable on the claim.

■ Commonwealth Edison argues, however, that in a liquidating chapter 11 case, as

---

4. Commonwealth Edison says its claim represents the charges for utility supplied to Aargus from June 18, 1992 through April 16, 1993.

Therefore, many of these bills on which Commonwealth Edison relied for its belief that it would be paid were delinquent over a year.

with a corporate chapter 7, claims are not discharged,[5] and late filed claims are simply subordinated to third priority under § 726(a)(3). Therefore, even if the Court were to deny priority status to the claim for post-petition utility service, Commonwealth Edison argues that it would still have a third priority claim against which it may exercise its setoff rights. Again, this argument confuses claims against the estate (dealt with in chapter 7 cases by § 726) and claims against the debtor (dealt with under the discharge and dischargeability provisions of the Bankruptcy Code). Moreover, this argument erroneously applies § 726(a)(3) to a post-petition claim. Section 726 applies to "claims" which are tardily filed under § 501(a). The allowance or disallowance of a § 501 claim is governed by § 502 which is limited by its language to "claim[s] as of the date of the filing of the petition." A request for payment of a post-petition administrative expense in chapter 7 is not subject to § 726(a)(3), but § 726(a)(1). That latter section provides for the payment of allowed administrative expenses. *See* §§ 507, 503(b). As discussed above, Commonwealth Edison does not have an allowed post-petition administrative expense claim against the estate. Therefore, no claim against the estate exists against which Commonwealth Edison may setoff, and the assertion of a right to setoff is without merit.[6]

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the Debtor is entitled to judgement on the pleadings as to Count V of the Complaint. Commonwealth Edison has admitted that it received an unauthorized $28,-

---

**5.** "The confirmation of a plan does not discharge the debtor if the plan provides for the liquidation of all or substantially all of the property of the estate." 11 U.S.C. § 1141(d)(3)(A).

**6.** Assuming that Commonwealth Edison had an administrative expense claim against the estate, it still would not have been able to assert the defense of setoff. A creditor has a right to setoff a mutual debt owing by the creditor to the debtor provided that both debts are mutual and arose *before commencement of the bankruptcy case.* *In re Davidovich (Davidovich v. Welton),* 901 F.2d 1533, 1536 (10th Cir.1990). As discussed above, avoidance of the post-petition payment simply restores Commonwealth Edison to the status of a

832.35 payment on or around July 7, 1992, after the Petition Date, and that post-petition payment was for utility services provided to the Debtor pre-petition. Therefore, the requirements of § 549 have been met.

Commonwealth Edison's claim for administrative expenses in the amount of $31,567.85 is denied. Commonwealth Edison did not timely file a proof of claim, nor did it satisfy the *Pioneer* test for "excusable neglect" under Rule 9006(b)(1). As such, Commonwealth Edison has an unsecured pre-petition claim for $28,832.35 and may file proof within thirty days from the date of this judgement. Since Commonwealth has no other claim against the estate, the defense of setoff to the Aargus' § 549 claim is unavailing. Therefore, Commonwealth Edison has failed to raise material issues of fact and Aargus is entitled to judgement on the pleadings as to Count V of the Complaint.

---

pre-petition creditor. Even if Commonwealth Edison had a valid administrative claim, setoff would not be available because it is seeking to offset a pre-petition unsecured claim against a post-petition administrative claim. *In re Morgan,* 77 B.R. 81, 85 (Bankr.S.D.Miss.1987) (right to assert setoff against mutual *pre-petition* debt owed the estate survives discharge). Section 553 does not authorize offsetting of post-petition and pre-petition claims. *See New York City Shoes, Inc., v. McCarthy,* 115 B.R. 64 (D.Ct.E.D.Pa. 1990) (court would not allow the creditor to assert setoff of unpaid post-petition rent against a preference claim raised by the estate).