**In re Terence O'SHAUGHNESSY, Debtor.**

No. 99 B 24427.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 22, 2000.

William J. Serritella, Paul A. Greenberg, Aronberg, Goldgehn Davis & Garmisa, Chicago, IL, for Movant.

Daniel A. Zazove, Barbara L. Young, Field & Golan, Chicago, IL, for Debtor.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Ovid, Inc. ("Ovid") to extend the time for Ovid to file a timely proof of claim and to extend the time to file a complaint objecting to discharge.[1] For the reasons set forth below, the Court grants the motion. Either or both requests for relief shall be filed with the Court by or before fourteen days of the date of this Opinion. This matter illustrates how important it is for all debtors in bankruptcy cases to properly schedule and list all of their possible creditors so that bar date notices can be served.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## II. FACTS AND BACKGROUND

On August 5, 1999, Terence O'Shaughnessy (the "Debtor") filed a voluntary

1. Ovid seeks an extension of time to file a complaint objecting to discharge although its pleadings really focus on dischargeability issues under 11 U.S.C. § 523. This was probably an oversight on Ovid's part. Accordingly, the Court will address the request as an extension to file a dischargeability complaint rather than one objecting to discharge.

Chapter 11 petition. The Debtor was the former treasurer and secretary of Always Open Franchising Corp. ("AOFC") and was the co-founder and former president of S & O, Inc. ("S & O") (AOFC and S & O will sometimes collectively be referred to as "Always Open"). Until 1999, AOFC operated and franchised convenience stores under the trade name and service mark "Always Open." S & O, an affiliate of AOFC, owned and operated franchise stores and developed the "Always Open System," an operating guideline for all of the Always Open stores.

In March, 1997, Ovid, after reviewing the Always Open offering circular, entered into a franchise agreement with AOFC pursuant to which Ovid paid in excess of $45,000.00 to Always Open. On March 3, 1999, AOFC and S & O filed voluntary Chapter 11 petitions. Their attempted reorganizations failed and on December 30, 1999 these cases were dismissed.

The Debtor listed Ovid as a creditor on the list of creditors filed with his petition. *See* Exhibit No. 1 to Ovid's Motion. It is undisputed that the address listed, 10340 S. Keating, Oak Lawn, Illinois 60453, was incorrect. This address had not been Ovid's registered agent's office address since December 31, 1997, when Ovid filed a statement of change of registered agent and/or registered office with the Illinois Secretary of State. *See* Exhibit No. 2 to Ovid's Motion. This address for Ovid was also the home address of George Tsourdinis ("Tsourdinis"), an officer of Ovid. Tsourdinis filed the statement of change of registered agent and/or registered office because, and only after, he sold his home and relocated. *See* Exhibit No. 3 to Reply in Support of Motion, Affidavit of Tsourdinis at ¶ 2. It is also undisputed that the Debtor's subsequently filed Schedules did not list Ovid among his creditors and other parties in interest.

Further, it is undisputed that Ovid did not receive any notices sent regarding the bankruptcy case such as the 11 U.S.C. § 341 creditors' meeting, and most signifi-cantly for this matter, the bar date for filing claims and the bar date for filing complaints objecting to the Debtor's discharge or dischargeability of certain debts.

On August 23, 1999, a notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines was sent by the Clerk's Office. This notice was not sent to nor served on Ovid. Thereafter, on October 1, 1999, the Debtor filed a motion seeking an order establishing a bar date for creditors to file their proofs of claim and approving a form of notice to be sent to creditors informing them of the bar date. Ovid was not sent nor did it receive notice of the motion. On October 5, 1999, the Court entered an order establishing a bar date for filing proofs of claim and approving the form of notice (the "Bar Date Notice"). Pursuant to the Bar Date Notice, November 30, 1999 was the last date upon which creditors whose claims were listed as disputed, contingent or unliquidated, or who otherwise disagree with the Debtor as to the amount and/or type of claim they held could file their proofs of claim. The Court ordered that the Bar Date Notice be served on all creditors and it is undisputed that the Debtor did not serve Ovid. The last date to file a complaint to determine the dischargeability of any debts pursuant to 11 U.S.C. § 523(c) was November 8, 1999. On October 29, 1999, the Debtor filed a supplemental notice of bar date for filing proofs of claim and interest, which added several creditors to the service list. Ovid was not one of the additional creditors listed on the supplemental certificate of service.

On December 3, 1999, the Debtor filed his plan of reorganization and disclosure statement. Thereafter, on January 18, 2000, the Debtor filed an amended plan and disclosure statement. Notices of the subsequently scheduled hearings on the adequacy of the disclosure statement and confirmation of the amended plan were sent. Ovid was not listed on the service list attached to these pleadings and thus did not receive notice. On March 30, 2000,

the Court confirmed the Debtor's amended plan. *See* Exhibit A to Debtor's Response to Ovid's Motion. However, by the time Ovid had actual knowledge of the bankruptcy case, the bar dates had expired.

Ovid contends that it did not learn of the Debtor's bankruptcy filing until late December, 1999, when Tsourdinis learned of the pendency of this case. *See* Exhibit No. 3 to Ovid's Reply in Support of the Motion, Affidavit of Tsourdinis at ¶ 3 and Affidavit of Steve Lindgren at ¶ s 3 and 4. Ovid did not obtain present counsel until late March, 2000. Ovid now contends that it has claims against the Debtor for misrepresentations he made in connection with the franchise agreement between Ovid and Always Open so that the Debtor is liable under the Illinois Franchise Disclosure Act, 815 ILCS 705/26; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2; and common law fraud.[2] The instant motion was not filed until June 9, 2000. Thus, Ovid did not take any action upon learning of the bankruptcy filing until five months thereafter, which was three months after the Debtor's amended plan was confirmed. At this point in time, distributions under the confirmed plan have commenced, and thus it likely has been substantially consummated for purposes of 11 U.S.C. § 1127(b).

Ovid requests the Court to extend the time in which to file its proof of claim. In addition, Ovid asks the Court to extend the time in which to file a complaint objecting to the dischargeability of its debt. Ovid concludes the Debtor knowingly omitted it from the Schedules with intent to preclude it from its remedies and should be sanctioned. The Debtor contends that Ovid's motion is untimely because the Debtor's amended plan has been confirmed. Further, the Debtor argues that Ovid had actual notice of the bankruptcy filing and/or actual knowledge can be imputed to Ovid through its prior counsel. Finally, the Debtor contends that Ovid is not a creditor of the Debtor, but only a creditor of AOFC, and therefore, has no standing to assert a claim against the Debtor's estate or to object to the Debtor's discharge. The Court afforded the parties an opportunity for an evidentiary hearing, but they waived same. The Court posed several queries to the Debtor and Ovid, which both were to address in supplemental affidavits. Both parties filed affidavits, although those filed for Ovid were untimely.

## III. APPLICABLE STANDARDS

### A. Notice Requirements

"The purpose of requiring a debtor to list creditors with their proper mailing addresses is to afford those creditors basic due process notice." *In re Glenwood Med. Group, Ltd.*, 211 B.R. 282, 285 (Bankr.N.D.Ill.1997) (citations omitted). While the Bankruptcy Code provides no guidance as to what is the proper address of a creditor, it is clear that such an address must provide the creditor reasonable notice of the bankruptcy case. *Id.* The heart of Ovid's principal argument is predicated upon "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted). Thus, if a creditor is not given reasonable notice of the bankruptcy case and the relevant bar dates, its claim cannot be constitutionally discharged. *See In re Longardner and Assocs., Inc.*, 855 F.2d 455, 465 (7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130,

---

**2.** The Court logically infers that Ovid asserts its various claims against the Debtor to be of the nature of allegedly non-dischargeable fraud-based claims under 11 U.S.C. § 523(a)(2)(A) and/or 11 U.S.C. § 523(a)(2)(B), and possibly 11 U.S.C. § 523(a)(4) on the merits and thus also non-dischargeable under 11 U.S.C. § 523(a)(3).

103 L.Ed.2d 191 (1989). The Court must look at the totality of the circumstances in determining whether notice was reasonable. *Illinois ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir.1989). What constitutes "reasonable notice," however, varies according to the knowledge of the parties. *See In re S.N.A. Nut Co.*, 198 B.R. 541, 543 (Bankr.N.D.Ill.1996). One circumstance to consider in evaluating the sufficiency of notice is whether alleged inadequacies in the notice prejudiced the creditor. *In re Walker*, 149 B.R. 511, 514 (Bankr.N.D.Ill.1992) (citation omitted). Another circumstance to consider is whether notice was given to the creditor in time for it to take meaningful action in response to the impending deprivation of its rights. *Id.* (citations omitted).

■ A party with actual notice of a bankruptcy case must act diligently to protect its interest, despite the lack of formal notice. *In re Marino*, 195 B.R. 886, 893 (Bankr.N.D.Ill.1996) ("A creditor, who knows of the proceeding but has not received formal notice, should be prevented from standing back and allowing the bankruptcy action to proceed. . . ."). A creditor's informal actual knowledge of a pending bankruptcy case is sufficient to satisfy due process. *See In re Pence*, 905 F.2d 1107, 1109 (7th Cir.1990).

### B. *Time for Filing Proofs of Claim*

■ Federal Rule of Bankruptcy Procedure 3003(c) governs the time for filing a proof of claim in a Chapter 11 case. As a routine measure in a Chapter 11 case, a bankruptcy court must set a bar date for all creditors to file their proofs of claim. *See* Fed. R. Bankr.P. 3003(c)(2). Bankruptcy Rule 3002(c)(2) provides:

Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for purposes of voting and distribution.

Fed. R. Bankr.P. 3002(c)(2).

■ Bankruptcy Rule 3003(c)(3), in turn, provides in relevant part, "[t]he court shall fix and for *cause* shown may extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr.P. 3003(c)(3) (emphasis supplied). After the bar date has passed, a creditor may move the bankruptcy court for an extension of time to file its proof of claim. *See* Fed. R. Bankr.P. 9006(b)(1). The meaning of "cause" in Bankruptcy Rule 3003(c)(3) is elaborated in Bankruptcy Rule 9006(b)(1). *See Aargus Polybag Co., Inc. v. Commonwealth Edison Co., Inc. (In re Aargus Polybag Co., Inc.)*, 172 B.R. 586, 589 (Bankr.N.D.Ill.1994). Bankruptcy Rule 9006(b)(1) provides in part:

[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr.P. 9006(b)(1). Bankruptcy Rule 9006(b)(1) allows late-filed claims to be deemed timely upon a showing of "excusable neglect."

■ The creditor seeking to have its proof of claim deemed timely filed has the burden of proving "excusable neglect" by a preponderance of the evidence. *In re Dartmoor Homes, Inc.*, 175 B.R. 659, 665 (Bankr.N.D.Ill.1994) (citations omitted); *In re Specialty Equip. Cos., Inc.*, 159 B.R. 236, 239 (Bankr.N.D.Ill.1993) (citations omitted). The United States Supreme Court established a two-step test for determining "excusable neglect" under Bank-

ruptcy Rule 9006. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). First, the movant must show that its actions constituted "neglect." Neglect can be established either by (1) circumstances beyond the movant's control; or (2) the movant's inadvertence, mistake or carelessness. *Id.* at 387–88, 113 S.Ct. 1489. If neglect is shown, then the movant must prove that the neglect was "excusable." This entails a balancing test which includes review of the following factors: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; (4) whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. 1489. These factors are nonexclusive; the test requires an equitable determination "taking account of all relevant circumstances surrounding the party's omission." *Id.* (footnote omitted). Generally, however, er, "[l]ate-filed claims, especially in the bankruptcy context, disrupt orderly discharge and should generally be barred." *In re Unroe,* 937 F.2d 346, 351 (7th Cir. 1991). *See also In re Stavriotis,* 977 F.2d 1202 (7th Cir.1992).

### C. *Filing a Complaint Objecting to Dischargeability*

■■■■ Federal Rule of Bankruptcy Procedure 4007(c) sets forth the time to file certain complaints objecting to the dischargeability of a debt. Bankruptcy Rule 4007(c) provides:

A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The mo-

tion shall be filed before the time has expired.

Fed. R. Bankr.P. 4007(c). Rule 4007(c) permits the Court to extend the sixty-day period if "cause" is found, but only if the motion for such relief is filed " before the time has expired." *Marino,* 195 B.R. at 890. Because Rule 9006(b)(3) restricts the discretion of bankruptcy courts to extend this sixty-day period, courts have generally viewed the deadline fixed by Rule 4007(c) to be "set in stone." *See Federal Deposit Ins. Corp. v. Kirsch (In re Kirsch),* 65 B.R. 297, 300 (Bankr.N.D.Ill.1986). Once time expires, the filing period cannot be extended on grounds of excusable neglect or otherwise. *Id.* (citations omitted). This "set in stone" interpretation, however, cannot be applied in all cases. *See Marino,* 195 B.R. at 891. Courts have not enforced the sixty-day bar date where a creditor did not receive notice of the bankruptcy or of the bar date. *Id.* (citing *In re Eliscu,* 85 B.R. 480 (Bankr.N.D.Ill.1988); *In re Walker,* 149 B.R. 511 (Bankr.N.D.Ill.1992); *United States v. Dambrie (In re Dambrie),* 153 B.R. 602 (Bankr.D.Me.1993) (footnote omitted)).

■■■■ Those creditors who have claims that may be non-dischargeable under § 523(a)(2), (a)(4) or (a)(6) who are neither listed nor scheduled and who do not learn of the debtor's pending bankruptcy case in time to timely file proofs of claim and/or dischargeability complaints before the bar dates run under Bankruptcy Rules 3002(c) and 4007(c), can have their claims excepted from discharge under 11 U.S.C. § 523(a)(3) if they can show that they had neither notice nor actual knowledge of the case in time for such timely filings and requests.

### D. *Res Judicata Effect of Confirmed Plans of Reorganization*

■■■■ "Under the Bankruptcy Code, a proof of claim must be presented to the Bankruptcy Court for administration, or be lost when a plan of reorganization is confirmed." *National Labor Relations*

*Bd. v. Bildisco and Bildisco,* 465 U.S. 513, 529, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (citations and footnote omitted). Moreover, confirmation of a plan of reorganization operates as res judicata to bar the allowance of any late-filed claims. *See* 11 U.S.C. § 1141; *In re 50–Off Stores, Inc.,* 220 B.R. 897, 908 (Bankr.W.D.Tex.1998). While these general principles hold true, they must give way when a creditor has not received notice of the pendency of the bankruptcy case. When applying the Bankruptcy Code and Rules would deny a claimant its procedural due process rights in violation of the Fifth Amendment of the Constitution, then the Constitution must take precedence and the Code and Rules must be set aside or modified in their application. *Walker,* 149 B.R. at 514. As the Seventh Circuit has opined: "[i]t is universally agreed that adequate notice lies at the heart of due process. Unless a person is adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose-and resembles more a scene from Kafka than a constitutional process." *Chicago Cable Communications v. Chicago Cable Comm'n,* 879 F.2d 1540, 1546 (7th Cir.1989) (quotation omitted), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 839, 107 L.Ed.2d 835 (1990). As the Seventh Circuit recently noted in another bankruptcy context: "[i]f his name and address are reasonably ascertainable, he is entitled to have that information sent directly to him, but, if not, then publication of the information in the newspaper or other periodical that he's most likely to see is permitted." *Fogel v. Zell,* 221 F.3d 955, 963 (7th Cir.2000) (citations omitted).

## IV. *DISCUSSION*

The matter at bar pits the constitutional procedural due process based arguments of Ovid against the principles of finality and the res judicata effect of a confirmed reorganization plan urged by the Debtor. In the typical reorganization case, all these important interests are usually harmonized, but under the peculiar facts of this matter one party's position must yield to the other party's interests where both sides marshal compelling arguments and authorities. The Court concludes that Ovid's constitutional procedural due process rights trump the Debtor's understandable and legitimate interests in the finality of and res judicata effect of his confirmed reorganization plan.

After review of the parties' papers, including the affidavits, the Court finds that Ovid was not provided timely or reasonable notice of the claims bar date or the date by which its complaint objecting to the dischargeability of its debt under § 523(a)(2) was to be filed. It is undisputed that Ovid, through its agent and officer, Tsourdinis, did not learn of this bankruptcy case until late December, 1999. *See* Exhibit No. 3 to Reply in Support of Motion, Affidavit of Tsourdinis at ¶ 3. Notices to Ovid, through its former counsel, in the Always Open cases, are not the functional equivalent of proper notice in this case. Further, it is undisputed that the Debtor initially listed Ovid as a creditor with the bankruptcy petition, albeit at the wrong address, and that Ovid did not receive any notices sent regarding the bankruptcy case such as the 11 U.S.C. § 341 creditors' meeting, the bar date for filing claims and the bar date for filing complaints objecting to the Debtor's discharge or dischargeability of a debt.

Actual notice of the bankruptcy proceeding may, in certain cases, constitute reasonable notice for purposes of due process. However, such notice satisfies the Bankruptcy Code and due process requirements only if "the creditor receives notice adequate enough to afford it an opportunity to file a complaint or seek to extend the time for filing a complaint for dischargeability...." *Marino,* 195 B.R. at 894 (citing *Walker,* 149 B.R. at 514). In the *Walker* case, the creditor first learned of the debtor's bankruptcy case from a non-lawyer third party, only twenty days before the deadline for filing 11 U.S.C. § 523 dischargeability actions. Because

the only information known to the creditor was that some form of bankruptcy had been filed; the information was acquired through a conversation between two non-lawyers; and the party conveying the information was not a representative of the debtor, the court held that the requisite notice under the Bankruptcy Code and the Fifth Amendment had not been provided. *Walker,* 149 B.R. at 516–17. Specifically, the court stated:

> After this conversation, the president of [the creditor] was left with a mere twenty days to find out that some special action in the bankruptcy court would be required, then contact and possibly hire a lawyer, investigate [the creditor's] rights in [the debtor's] bankruptcy, and finally file an Adversary Complaint or a motion to extend time prior to the bar date. It cannot be seriously contended that the draconian 60–day time limits set by Fed. R. Bank. P. 4007 (likely the shortest statute of limitations in American jurisprudence) either is or should be known by the average businessman.

*Id.* at 515.

■ The Debtor does not dispute that Ovid did not receive notice of the bankruptcy filing until after the passage of all applicable bar dates. Instead, the Debtor claims that in light of Ovid's five-month delay in preserving its rights as against the Debtor's estate, the motion should be denied as untimely. Although Ovid had counsel for a time in the Always Open cases, that counsel's services concluded on or about June 4, 1999, before the Debtor filed his own Chapter 11 petition on August 5, 1999. *See* Exhibit No. 7 to Reply in Support of Motion, Affidavit of Miriam R. Stein at ¶ 6. The Court finds that Ovid's conduct was reasonable under the circumstances and its delay in filing the instant motion was not so unduly long as to warrant denial of the motion as untimely. In March, 2000, Ovid retained Aronberg Goldgehn Davis & Garmisa ("AGDG") to investigate and prosecute its claims against AOFC, George Slowinski, the for-

mer president of AOFC, and the Debtor. Thereafter, on June 9, 2000, AGDG, after investigating Ovid's potential claims against AOFC and the Debtor, filed the instant motion on behalf of Ovid. The Court finds that the five-month delay in filing the motion was reasonable given the complex nature of the AOFC bankruptcy case and the Debtor's bankruptcy case. *See* Affidavits of William J. Serritella, Jr. and Paul A. Greenberg; *see also Pettibone Corp. v. Payne (In re Pettibone Corp.),* 151 B.R. 166, 174 (Bankr.N.D.Ill.1993) (claimant's ten-month delay between the time it learned of the bankruptcy case and the time it requested leave to file an untimely proof of claim was reasonable where the claimant had to retain bankruptcy counsel, who, in turn, had to investigate a complex bankruptcy case, including a complex plan of reorganization and disclosure statement).

■ Furthermore, the Court rejects the Debtor's argument that because the amended plan of reorganization was confirmed on March 30, 2000 (*see* Exhibit A to Debtor's Response to Ovid's Motion), priority claims have been paid, and the Debtor has made an initial interim distribution to unsecured creditors holding ultimately allowed claims, as defined by the plan, (*see* Exhibit B to Debtor's Response to Ovid's Motion, Affidavit of Terence O'Shaughnessy at ¶ 3), Ovid's motion should not be granted. The Debtor's confirmed plan proposes to pay up to 100% of all such ultimately allowed claims, without interest, out of his assets and future income. *See* Exhibit A to Debtor's Response to Ovid's Motion, Article 6, § 6.2. If Ovid is allowed to file its proof of claim, to which the Debtor will certainly object, there will have to be a subsequent trial on the merits. Allowance of the instant motion merely affords Ovid the opportunity to file and prove its underlying claim as well as a chance for the Debtor to defend against it. At this stage, it is unknown what the result will be and whether Ovid or the Debtor will prevail. Because Ovid had no actu-

al notice or knowledge of the pendency of the Debtor's case prior to the expiration of the claims and dischargeability bar dates, despite being initially listed among the Debtor's creditors, it should equitably be afforded the opportunity to assert its claim along with the other claimants who were properly noticed of those key deadlines. Although this conclusion may delay payments to the general unsecured claimants, such a disruption to the administration of the estate does not justify infringement of Ovid's due process rights. *See In re Intaco Puerto Rico, Inc.,* 494 F.2d 94, 100 (1st Cir.1974) (holding that a known creditor without notice of confirmation was not barred from filing a late claim although "some problems would be created with respect to the administration of the ... reorganization plan").

The Court finds that Ovid has demonstrated "excusable neglect" by a preponderance of the evidence. The Court further finds that Ovid did not receive reasonable notice of the pendency of the Debtor's bankruptcy case. Because Ovid was not provided with proper notice of the bar dates, its failure to file a proof of claim within the specified time period constitutes "neglect." *See S.N.A. Nut Co.,* 198 B.R. at 544 n. 2 (failure of creditor to timely file a proof of claim constituted "neglect" where creditor was not provided with notice of confirmation date). Additionally, the fact that the Debtor failed to list Ovid's correct current registered agent's office address on the list filed with his petition constitutes circumstances beyond Ovid's control. In the Debtor's supplemental affidavit filed in opposition to the motion, he stated he does not have a specific recollection as to who prepared the list of creditors filed with the petition or that he reviewed it; that he got information from an employee of AOFC and its attorney; and that he does not know why Ovid was included in the list although at no time did he believe Ovid had any claim against him personally. *See* Debtor's Supplemental Affidavit at ¶s 2–7. Thus,

he attributed Ovid's inclusion as an inadvertent mistake. *Id.* at ¶ 9.

The Court holds that the neglect by Ovid to act more quickly was "excusable." The Debtor's actions in allowing some one to list Ovid as a creditor on the list filed with the petition at the incorrect address are questionable at best and suspect at worst. Ovid changed its address two years prior to the Debtor's filing. The Debtor or his attorneys could have made an easy inquiry into finding Ovid's correct registered agent's office address. In fact, based upon the evidence submitted, the Court finds that at the time the Debtor listed Ovid's incorrect address on the list of creditors filed with the petition, he knew that this address was incorrect and knew the proper address for Ovid. Ovid's correct address was listed on the certificate of service attached to AOFC's notice of Chapter 11 bankruptcy case, and the Debtor had corresponded with Ovid at its correct address on March 6, 1999, five months before he filed the bankruptcy petition. *See* Exhibit Nos. 4 and 5 to Reply in Support of Motion. The Debtor asserts in his supplemental affidavit that this letter to Tsourdinis and Mr. Steven Lindgren was a form letter prepared for his signature by AOFC's bankruptcy counsel. *See* Debtor's Supplemental Affidavit at ¶ 14. The Debtor further states that at no time was he aware of Ovid's business address or of the fact that they had moved. *Id.* at ¶ 13. This is disinguous because all parties who are competent adults are subject to the consequences of what they sign, whether they remember same or not.

The Debtor argues that he did not bear the responsibility of attempting to ascertain whether Ovid has relocated its business. The Debtor contends that Ovid is responsible for notifying the parties and the Court of any changes in its mailing address. The Court rejects that point. The Debtor bears the burden of attempting to ascertain correct addresses for his creditors. *See In re Robertson,* 13 B.R.

726, 731 (Bankr.E.D.Va.1981) ("Although a bankrupt is not required to exhaust every possible avenue of information in ascertaining a creditor's address, he must exercise reasonable diligence in accurately scheduling his debts."). The Debtor's statement in his supplemental affidavit that he has no recollection of whether he reviewed the list of creditors filed with the bankruptcy petition prior to it being filed does not excuse his duty to ascertain creditors' correct addresses. *See* Debtor's Supplemental Affidavit at ¶ 2. This result logically flows from the fact that this case, like most bankruptcy cases, was started with a voluntary petition by the Debtor who is obligated under 11 U.S.C. § 521(1) and Federal Rule of Bankruptcy Procedure 1007(a)(1) to list each creditor with address among the other data and information to be supplied to show the Debtor's complete financial situation. Complete and full disclosure is the quid pro quo for the substantial benefits obtained by the automatic stay of 11 U.S.C. § 362(a) which is subsumed by the discharge provisions of 11 U.S.C. § 1141 in a Chapter 11 case. If debtors seek such protection it is incumbent upon them to list and give notice to all possible creditor claimants, including those whose claims are disputed, unliquidated or contingent. Failure to do so produces the result in this matter.

■ The Debtor further argues that even if Ovid was not provided with proper notice, notice should be imputed to Ovid because Ovid was represented by Kamensky & Rubenstein ("K & R") in the instant case. The Court rejects this argument as well.

First, the Court notes that in the Debtor's Motion to Strike and Response to Kamensky & Rubinstein's [sic] Motion to Continue Confirmation Hearing on Debtor's Amended Plan of Reorganization and Objection to Debtor's Amended Plan of Reorganization (the "Debtor's Motion to Strike"), the Debtor argued that K & R did not have standing to assert its motion because "Kamensky & Rubinstein [sic] is not currently representing any franchisee in this case." *See* Exhibit No. 6 to Reply in Support of Ovid's Motion at p. 2, ¶ 2. The Court finds that this admission precludes the Debtor from now claiming that K & R represented Ovid in the instant case. *See In re Bloomingdale Partners,* 160 B.R. 101, 110 n. 8 (Bankr.N.D.Ill.1993) (statements contained in document submitted to court in support of the debtor's motion shall be treated as admissions as to subsequent related matters).

Moreover, the Court finds that the facts establish that Ovid was not represented by K & R in the instant case. Therefore, notice cannot be imputed to Ovid. In March 1999, a group of franchisees of Always Open convenience stores, including Ovid, retained K & R to represent their collective interests in the bankruptcy case of the franchiser, AOFC. *See* Exhibit No. 7 to Reply in Support of Motion, Affidavit of Miriam Stein at ¶ 2. During the pendency of the AOFC bankruptcy, K & R, on behalf of the franchisees, negotiated settlements with AOFC which transferred ownership of the individual convenience stores to those franchisees who were then operating Always Open stores. *Id.* K & R attempted to negotiate the same settlement on behalf of Ovid, but was unable to do so because the terms of the lease on the property, where Ovid purportedly was to operate its Always Open convenience store, had not yet commenced. *Id.* at ¶ 3. As a result, the lessor of the property, Three Creek Development, LLC ("Three Creek"), filed a motion seeking to terminate the lease. *Id.* K & R filed a response to Third Creek's motion which sought to compel Three Creek to accept Ovid as tenants. *Id.* at ¶ 4. On June 4, 1999, however, the Court granted Three Creek's motion and terminated the lease. *Id.*

Based on the foregoing, K & R's representation of Ovid ceased on June 4, 1999. *Id.* at ¶ 5. Because Ovid was not then operating an Always Open convenience store, its interests were materially different than those of the other franchisees.

*Id.* K & R advised Ovid that if it wanted K & R to continue to represent it, Ovid would have to retain K & R on its own behalf. *Id.* Although Ovid requested that K & R continue to represent it on a contingency basis, K & R refused to do so. *Id.* K & R did not charge Ovid for, nor did K & R perform, any legal services on Ovid's behalf after June 4, 1999. *Id.* at ¶ 6. K & R did not have any conversations with Ovid regarding the AOFC bankruptcy case, the Debtor's case or otherwise, after June 4, 1999. *Id.*

The Court finds that, based on the uncontroverted affidavit of Miriam Stein, an attorney with K & R, K & R did not represent Ovid in the Debtor's bankruptcy case and, therefore, notice of the case cannot be imputed to Ovid. *See Marino,* 195 B.R. at 895 (an attorney's actual notice of the pendency of a bankruptcy case may be imputed to his client if it occurs within the scope of the attorney-client relationship).

Next, the Court will address the Debtor's argument that Ovid is not one of his creditors and therefore has no standing to assert a claim against his estate or to object to the Debtor's discharge. Further, the Debtor contends that the allegations of fraud set forth in the motion were not pleaded with the requisite specificity required by Federal Rule of Bankruptcy Procedure 7009(b). The Court finds that this argument lacks merit.

Pursuant to Count I of a draft state court complaint (Exhibit No. 1 to Reply in Support of Ovid's Motion), a cause of action against the Debtor is asserted based on Section 26 of the Illinois Franchise Disclosure Act, 815 ILCS 705/26. Counts II and III of the draft complaint allege causes of action against the Debtor under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and for common law fraud, respectively. *Id.*

■ Ovid is a former franchisee of AOFC and alleges a claim against the Debtor based upon that franchisee rela-

tionship. Ovid contends in the draft complaint that the Debtor, as the former treasurer, secretary and co-founder of AOFC, is jointly and severally liable for AOFC's violations of the Illinois Franchise Disclosure Act because he was allegedly aware of AOFC's fraudulent misconduct and actually participated in such conduct himself.

The Debtor recites general corporate law to the effect that personal liability for a corporation's debts cannot be imposed upon an officer or shareholder of the corporation. The Court rejects the Debtor's argument that Ovid is not a creditor of the Debtor. Rather, it is a creditor whose claim is hotly disputed. Under 11 U.S.C. § 101(10)(A), a creditor is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Further, 11 U.S.C. § 101(5)(A) defines claim as including a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Based on this statutory language and the allegations in the draft complaint, the Court finds that Ovid is a creditor of the Debtor. Ovid is the holder of a "right to payment" from the Debtor, albeit disputed, based on the allegations in the draft complaint.

■ Additionally, the Court finds that the Debtor's argument that the allegations of fraud set forth in the draft complaint were not pleaded with specificity is not ripe at this stage of the litigation. At this stage, which is on Ovid's motion to allow it to file a timely proof of claim and extend the time for filing its complaint, analysis regarding the sufficiency of a draft complaint, which has not yet been filed, would be improper. Moreover, procedurally any complaint to determine whether Ovid's claim should be found nondischargeable under § 523(a)(2) or § 523(a)(3), or some other section of the Bankruptcy Code, requires the filing of a separate adversary proceeding as mandat-

ed by Federal Rule of Bankruptcy Procedure 7001(6). *See also In re Pence,* 905 F.2d 1107; *In re Perkins,* 902 F.2d 1254 (7th Cir.1990). To date, no adversary proceeding has been filed. Hence, any further discussion of the merits of any complaint, which has not yet been filed, would be inappropriate.

■ "When a proof of claim may be filed and whether a filed proof of claim will be deemed allowed are two distinct issues governed by separate provisions of the Code." *In re Johnson,* 156 B.R. 557, 558 (Bankr.N.D.Ill.1993). Consequently, the Court finds that a review of the merits of Ovid's yet to be filed proof of claim is not appropriate at this time.

Moreover, and most telling to the Court is the fact that the Debtor listed Ovid as a creditor on the creditor list filed with his bankruptcy petition. If he did not believe Ovid to be a creditor, he certainly should not have listed him as such. In his supplemental affidavit, the Debtor states that he does not know why Ovid was listed as a creditor, and that at no time did he believe that Ovid had a claim against him personally. *See* Debtor's Supplement Affidavit at ¶s 6 and 7. Further, he states that he never considered Ovid to be one of his creditors, and therefore, Ovid's placement on the list of creditors filed with the bankruptcy petition can only be attributed to an inadvertent mistake by whoever prepared the list. *Id.* at ¶ 8 and 9.

■ It is disingenuous for the Debtor at this point to contend that Ovid is not one of his creditors. That the Debtor listed Ovid on the list filed with his petition precludes him from now arguing that Ovid is not a creditor. *See In re Standfield,* 152 B.R. 528, 531 (Bankr.N.D.Ill.1993) (verified schedules and statements filed by debtors contain admissions).

Finally, the Court will address Ovid's request for an extension of time to file a complaint objecting to the dischargeability of the debt. In addition, Ovid requests that, as a sanction, the Court declare the debt owed to Ovid non-dischargeable. The Debtor argues that Ovid's motion is untimely and should be denied because the plan has been confirmed.

■ Generally, courts are reluctant to allow late-filed claims after a plan has been confirmed. *Unroe,* 937 F.2d at 351. However, even in circumstances where no misconduct can be imputed to the debtor, courts have allowed the filing of late claims even though problems may be created with respect to the administration of the plan. *See S.N.A. Nut Co.,* 198 B.R. at 544 n. 2; *In re Arlington Heights Congregate Hous. Partnership,* 189 B.R. 187 (Bankr.S.D.Ind. 1995). In fact, in *Marino,* the case primarily relied upon by the Debtor, the court stated:

> Were this a case where Debtor was shown to have knowingly omitted [the creditor-claimant] from the schedules with intent to preclude him from using remedies available to creditors under the Code, the result here should and would have been different. Depending on when such conduct would be discovered, remedies could range from dismissing the bankruptcy case ..., revocation of Debtor's discharge or confirmation order, ... or allowance of a non-dischargeability complaint to be filed at any time....

*Marino,* 195 B.R. at 894. The *Marino* court did not impose sanctions on the debtor because "no such deliberate intent" was alleged, nor was the debtor alleged to have known pre-petition that the creditor had a claim. *Id.*

■ In the matter at bar, however, the Court finds that the Debtor admittedly and intentionally omitted Ovid from his Schedules which precluded it from timely utilizing certain remedies available to creditors under the Code. As a result of the Debtor's omissions, the Court will allow Ovid to file a complaint objecting to the dischargeability of its debt. This complaint must be filed by or before fourteen days from the date of this Opinion.

Next, Ovid asks the Court to sanction the Debtor by, inter alia, declaring the debt he owes to Ovid non-dischargeable. Section 523(a)(3) of the Bankruptcy Code penalizes debtors for failing to list all of their creditors and debts on the applicable Schedules. Section 523(a)(3)(A) provides:

> (a) A discharge ... does not discharge an individual debtor from any debt—
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit-
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing....

11 U.S.C. § 523(a)(3)(A). The burden is on the debtors to complete their Schedules accurately. *In re Faden,* 96 F.3d 792, 795 (5th Cir.1996) (quotation omitted). In addition, the burden of proof rests with the debtor to show that a creditor had notice or actual knowledge. *Id.* (citation omitted). "The burden is on the debtor ... to demonstrate absence of fraud or intentional design." *Id.* at 796 (quoting *Rion v. Springer (In re Springer),* 127 B.R. 702, 708 (Bankr.M.D.Fla.1991)).

Clearly, from the language of this statute, the mere failure to schedule a claim is not enough to bring that claim within the purview of § 523(a)(3)(A). The failure to schedule the claim must result in denying the creditor the opportunity to timely file a proof of claim. *Doherty v. Klimek (In re Doherty),* 176 B.R. 483, 485 (Bankr.S.D.Ill.1994). This subsection protects only the creditor's right to file a proof of claim, nothing else. *Id.* (citing *In re Stark,* 717 F.2d 322, 324 (7th Cir.1983); *In re Crum,* 48 B.R. 486, 490 (Bankr. N.D.Ill.1985); *In re Barrett,* 24 B.R. 682, 684 (Bankr.M.D.Tenn.1982)).

The Court finds that the Debtor indisputably listed Ovid as a creditor at an incorrect, two-year old address and, at a later time, knew its correct address. Moreover, the Debtor omitted Ovid from all statutorily mandated notices and failed to include Ovid in his subsequently filed Schedules. Under these circumstances, the Debtor should be sanctioned. The Court, however, cannot find the debt non-dischargeable under § 523(a)(3) absent the filing of an adversary proceeding, which is mandated under Bankruptcy Rule 7001(6). In addition, the Court cannot make a determination at this stage whether Ovid's claim should be allowed in whole or in part. That determination will be made through the claims allowance process after its proof of claim is filed.

## V. CONCLUSION

For the foregoing reasons, the Court grants Ovid's motion to extend the time in which to file a proof of claim and the time in which to file a complaint objecting to the dischargeability of its debt. Either or both requests for relief shall be filed by or before fourteen days from the date of this Opinion. If same is done a further status hearing will be held on November 7, 2000 at 9:00 in Courtroom 619, 219 South Dearborn Street, Chicago, Illinois.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.